JOSEPH C. MACKIN

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 14, 1885.*

1. CRIMINAL LAW—*special grand jury—presumption that it was properly ordered.* Where a *venire* is ordered by the court for a special grand jury, in the absence of anything in the record showing the contrary it will be presumed that the special facts and circumstances of the case justified the action of the court.

2. SAME—*as to the manner of finding an indictment—presumption.* Where the record is silent as to whether an indictment for perjury was found upon the information of the grand jurors, without other testimony, or upon the testimony of witnesses, it will be presumed it was found in the manner the law directs.

3. SAME—*perjury upon testimony of witness who waives his privilege not to criminate himself.* If the answers of a witness to questions put to him by a grand jury, would have the effect of disclosing criminal conduct on his part, he may claim his privilege and decline to answer, and his refusal can not form the basis of any prosecution against him; but if he does not avail of his privilege, and submits to answer, he must testify with as much truth and candor as in other cases; and if his testimony is willfully false, perjury may be assigned upon it.

4. SAME—*as to materiality of testimony upon which perjury is assigned.* On the trial of one for perjury for giving false testimony before a grand jury upon an inquiry as to the commission of a supposed crime, and the persons implicated in its perpetration, it is not necessary for the prosecution to prove that the crime had been actually committed in respect of which he falsely testified, in order to show that his testimony was material.

5. The testimony of a witness upon which an indictment for perjury is based, must have been material to the matter then being investigated or point in question before a tribunal or body authorized by law to investigate, and it devolves upon the prosecution not only to affirmatively so state, but also to show its materiality.

6. On an investigation before a grand jury of an alleged crime, any testimony tending to establish either that such crime was in fact committed, or that it had not been committed, is material, and perjury may be assigned upon the testimony of a witness before that body which is willfully false in respect to any fact tending to establish or disprove the commission of such crime.

7. On an investigation by a grand jury of an alleged criminal offence, namely, the corruption of the election returns of a certain precinct by changing the ballots after their return, and substituting in their place spurious ones, it is material to inquire into the fact of the engraving and printing of spurious ballots, and the fact of any conspiracy to make a criminal use of them; and to ascertain if any such conspiracy was formed, it is material to inquire who ordered the engraving and printing of such ballots, and who received them, and what disposition was made of them. And where a witness before the grand jury falsely denied that he ordered the engraving and printing of such ballots, and that he received the same, it was *held*, that his testimony was upon material points and matters involved in the inquiry before the grand jury.

8. SAME—*perjury upon general answer to question assuming several facts, some of which do not exist.* If a witness undertakes to answer a question involving several facts, although some of them are incorrectly assumed by the question, this will not justify him in answering the same in the negative, there being other facts which are therein correctly assumed to exist. In such case he should state the truth of the matters inquired of him.

9. SAME—*perjury—quantum of proof to convict.* The law, as it now obtains, does not make it necessary to a conviction for perjury that two witnesses shall disprove the fact sworn to by the defendant. If any material circumstance be proved by other witnesses in confirmation of the witness giving the direct evidence of the perjury, it may turn the scale, and warrant a conviction.

10. SAME—*reasonable doubt—giving the rule in instructions.* While it is true, that upon such evidence the jury must find the guilt of the accused beyond a reasonable doubt, yet it is not necessary to state in every instruction the degree or quantity of evidence indispensable to a conviction for perjury, nor to state the rule of evidence in such cases, in connection with the usual formula that no conviction can be had unless the accused is proven guilty beyond a reasonable doubt. It may be stated in a separate instruction if the accused desires to have the jury so instructed.

11. JUROR—*ground of objection known before acceptance.* A motion for a new trial in a criminal case was based on one, among other grounds, that one of the jurors trying the case was of unsound mind. It did not appear, by affidavit or otherwise, but that the mental condition of the juror was as well known to the defendant or his counsel before he was accepted, as afterward: *Held*, that this of itself was a sufficient reason for overruling the motion.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

This was an indictment against plaintiff in error, charging him with the crime of perjury. A trial was had, resulting in a verdict finding him guilty, and fixing his punishment at five years' imprisonment in the penitentiary. A motion for a new trial was made and overruled, and judgment entered on the verdict, and exceptions taken in due form. The other material facts appear in the opinion of the court.

Mr. JOHN C. RICHBERG, for the plaintiff in error:

Plaintiff in error could not legally be required to testify before the grand jury, if he was charged with the alleged crime they were investigating. That body can hear only one side. Nor could he be summoned to testify before the grand jury, if he was a witness for the defence.

The grand jury, of their own knowledge, could not proceed against or indict a witness by them summoned. The statute requires that "in all complaints exhibited before the grand jury of any county, they shall hear the witnesses on behalf of the People only." Rev. Stat. 1874, chap. 38, sec. 406; Rev. Stat. 1845, p. 186, sec. 187.

The foreman is empowered only to swear witnesses on behalf of the People. An oath administered by him to any one not a witness for the People, is of no binding force, and perjury can not be assigned on the testimony of such a witness.

Before an indictment for perjury can be found, at least two witnesses to the same fact must appear and testify before the grand jury. That body has no power to find an indictment for perjury upon their own information, or any two or more of them. Rev. Stat. 1874, chap. 38, sec. 407.

Mr. EMERY A. STORRS, also for the plaintiff in error:

The special grand jury in this case was not selected in the mode provided by law. At the time it was called, a regular grand jury was, if not in fact in session, in existence, and had been regularly drawn under the forms of law.

The proceeding in which plaintiff in error was examined as a witness was an investigation against him. The fifth amendment to the constitution of the United States provides that no person shall be compelled, in a criminal case, to be a witness against himself.

It is well settled law, that when a defendant is required by a grand jury to testify touching a criminal charge against him, pending before them, touching said charge, an indictment for such offence returned by the grand jury will be set aside. *State* v. *Forsythe*, 16 Minn. 296; *United States* v. *Farrington*, 5 Fed. Rep. 341; *United States* v. *Coolidge*, 2 Gall. 264; *Boyle* v. *State*, 17 Ohio, 225.

The instruction, that it was not necessary that a crime had been committed to make testimony material, is erroneous. In this case the offence alleged was the substitution of spurious ballots in the place of genuine ones, while the genuine ballots were in the office of the county clerk, and no such substitution is proved.

This question was put to Mackin by the grand jury: "Mr. Mackin, did you go into Mr. Wright's office in the afternoon of the 21st day of November, 1884, and show him what purported to be the regular Republican ticket used at the last election, and state to him or represent to him that you desired to have that ticket duplicated as speedily as possible, and with as much secrecy as possible, only changing in the ticket 'Henry W. Leman,' and placing thereon 'Rudolph Brand?'" To which he answered, "I have no recollection of any such visit." He was then asked, "Do you mean by that that you did not have the interview?" And answered, "Yes, sir." Upon this the assignment of perjury is based.

In the interrogatory the question of secrecy was involved, and if no injunction of secrecy was put upon the Wrights by Mackin, then he was justified in answering the entire question in the negative.

Counsel also discussed at length the instructions given and refused, and other matters, in which no authorities are cited.

Mr. GEORGE HUNT, Attorney General, Mr. JULIUS S. GRINNELL, State's Attorney, and Messrs. STILES & LEWIS, for the People:

The court had the power to order a special grand jury. Rev. Stat. chap. 78, sec. 19; *Stone* v. *People,* 2 Scam. 329.

It will be presumed the power was properly exercised until the contrary is shown. *McElwee* v. *People,* 77 Ill. 493; *State* v. *Hughes,* 38 Iowa, 165.

The constitutional provision that no party shall criminate himself, was not made to protect a witness in committing perjury. It gives a personal privilege only, which he may waive, and if he does, and testifies falsely, he may be convicted of perjury. *Mattingly* v. *State,* 8 Texas App. 345; *People* v. *Courtney,* 3 Hun, 199; *State* v. *Maxwell,* 28 La. Ann. 361; *Chamberlain* v. *People,* 23 N. Y. 85.

It was not necessary to prove that the offence was committed which was being investigated by the grand jury, in order to make Mackin's testimony material. *State* v. *Wakefield,* 9 Mo. App. 326; 73 Mo. 549; *State* v. *Schill,* 27 Iowa, 263.

A grand jury may indict for perjury a witness on his testimony before them. *State* v. *Terry,* 30 Mo. 368; 2 Sawyer, 667.

A proceeding before a grand jury is a judicial proceeding. *Massie* v. *State,* 5 Texas App. 81; 3 Greenleaf on Evidence, sec. 190; 1 Wharton on Crim. Law, sec. 1267.

The foreman of the grand jury was authorized to administer the oath to witnesses. (Rev. Stat. chap. 78, sec. 17.) Mackin therefore took a lawful oath in a judicial proceeding. That he swore falsely is established by overwhelming proof. That his testimony was willfully and corruptly false is established by the fact that he deliberately swore to that which

he knew to be untrue. 3 Greenleaf on Evidence, secs. 199, 200; *Scheller* v. *State*, 14 Mo. 505; *State* v. *Chamberlain*, 30 Vt. 559; *Johnson* v. *People*, 94 Ill. 505; *Kimmel* v. *People*, 92 id. 457.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

At the January term, 1885, of the Criminal Court of Cook county, the grand jury presented in open court an indictment against Joseph C. Mackin, charging him with perjury. The indictment contains two counts. Both counts are substantially the same, except the second omits many of the preliminary recitals of the first count. It appears from the averments in the first count of the indictment, the judge presiding in the Criminal Court, at the January term, 1885, charged the grand jury to inquire touching certain election matters arising out of a certain election theretofore, and on the 4th day of November, 1884, held for the choosing of certain officers, and among others a Senator for the sixth district of the State. It is alleged that in the investigation that followed it became and was a matter material in such investigation and inquiry, and a point in question, whether certain false and imitated election tickets or ballots then shortly before found and discovered in the hands and keeping of the county clerk, in connection and mixed with the returns made by the judges of election in the second precinct of the eighteenth ward, were used, changed and substituted for genuine "tickets and ballots" at such election; and also it became and was a matter material to the point in question, whether such false and imitated tickets and ballots had been unlawfully and corruptly substituted for true and genuine tickets and ballots used at the election so held in the second precinct of the eighteenth ward.

It was upon that inquiry and investigation being so made by the grand jury, it is alleged, it became and was a matter material to the point in question whether defendant did, after

the 4th day of November, 1884, to-wit, on or about the 21st day of the same month, direct and employ certain persons to engrave and print certain tickets or ballots in imitation of a certain ticket and ballot purporting to be a ticket and ballot such as was at and before such election issued by one of the political parties contesting at such election; and also, upon the same investigation and inquiry, it became and was material to the point in question to inquire whether defendant did procure the printing of election tickets or ballots, of any kind or description whatsoever, on or about the 21st day of November, 1884, and whether he did, on or about that date, obtain and receive from the printers a certain package containing certain tickets or ballots engraved and printed in imitation of a certain ticket and ballot purporting to be a ticket or ballot such as was issued and used at such election so held in the second precinct of the eighteenth ward, with the name of Rudolph Brand printed and substituted in the place of Henry W. Leman. It was in his testimony in relation to these matters then being investigated by the grand jury, under the charge of the court, that defendant was called as a witness, and in relation to which, after having taken the usual oath administered by the foreman of the grand jury in that which is a judicial proceeding then pending, it is alleged defendant committed willful and corrupt perjury.

The testimony of defendant before the grand jury, upon which the principal assignments of perjury are based, falls into two divisions: First, that he stated in his testimony before that body that he did not direct or employ the printers named to engrave and print the spurious tickets or ballots alleged to have been found in connection and mixed with the genuine tickets used at the election held on the 4th day of November, 1884, in the second precinct of the eighteenth ward; and second, that he did not receive a package from the printers containing the alleged spurious tickets or ballots after the same had been engraved and printed. The assign-

ments of perjury negative these statements in the testimony of defendant with usual fullness in such pleading.

It appears from the averments in the indictment, it was found by a special grand jury. In that respect it is insisted on behalf of defendant there is error in the record. Section 19, chapter 88, of the Revised Statutes of 1874, provides the judge of any court of record of competent jurisdiction may order a special *venire* to be issued for a grand jury at any time when he shall be of the opinion that public justice requires it. Unless something in the record disclosed the contrary, it will be presumed the discretion with which judges of courts of record are clothed in such matters has been well exercised in the interest of public justice. This much is conceded by counsel, but the objection taken is, that at the time the special grand jury in this case was called, a regular grand jury, if not in fact in session, was in existence. The fact on which the argument proceeds on this branch of the case nowhere appears in this record. It may be a grand jury had been regularly drawn for that term of court under the usual forms of law, but as to whether it had been discharged before this special grand jury was called, the record is absolutely silent. Every presumption, however, will be indulged to sustain the action of the court. Its action is to be presumed to be regular until it is made to appear otherwise. Nothing to the contrary appearing in this record, the presumption will be indulged that that state of facts existed which clothed the judge with a discretion to call a special grand jury, whenever, in his opinion, it was required in the interests of public justice.

Another point has been elaborately argued, that is not found, on examination, to have any existence in the record. It is, that the grand jury have no rightful authority, under the statute, to find an indictment, or to make a presentment for perjury, upon information of their own body, nor unless upon the testimony of two witnesses. There is nothing in this record to show how the indictment in this case was found,—

whether upon the information of the grand jurors themselves, or after hearing testimony of two or more witnesses, or without any testimony at all. As the record is silent in respect to these matters, it will be presumed the indictment was found in the manner the law directs. Any other rule would defeat the administration of public justice.

There is yet another objection of much the same character. It is assumed as a matter of law, that where a defendant is required by a grand jury to testify touching a criminal charge against him pending before them, and in pursuance of that request does testify before them touching such charge, and where an indictment for such offence is returned by the grand jury against him, it will be set aside, and it is sought to apply the rule stated to the defence being made. This can not be done. Whether the proposition stated embodies a correct principle of law, or not, no opinion need be expressed, for the reason, if correct, it can have no application to the present case. The perjury assigned is not upon any testimony given before the grand jury touching any charge then pending against defendant. No complaint had then been made by any one against him, nor had the court instructed the grand jury to investigate any charge against him. The grand jury had been charged by the court to investigate and inquire touching certain election matters arising out of a certain election held on November 4, 1884, and it was upon that inquiry defendant gave the testimony upon which the perjury is assigned. It was no more an investigation of a criminal charge against defendant than it was against the printers or engraver who did the work on the alleged spurious tickets or ballots, all of whom testified freely and fully before the same grand jury, and against whom it does not appear any indictments were found for perjury or any other offence.

Complaint is made that defendant was asked the direct question whether he ordered the spurious ballots, and whether he received them after they had been engraved and printed.

Doubtless the same questions in substance were asked of the printers and the engraver, all of whom answered without hesitation what connection they had with them. Had defendant been guiltless of any criminal use to be made of such spurious ballots thereafter, he could have answered as freely as did the other witnesses, and no one would have pretended any charge against him was being inquired into by the grand jury. Assuming the answers to the questions propounded to defendant would have disclosed criminal conduct on his part, it was his privilege to decline to answer, and his refusal could not have been made the basis of any prosecution against him. Of course no one can be compelled to give evidence against himself, and the law secures to every one when testifying in any legal proceeding, whether before the grand jury or in the trial court, the privilege to answer or to decline to answer, if, in his opinion, the answers to the questions would tend to disclose matters that might criminate him. The privilege secured is, however, a personal one, and if he shall waive it, and elect to testify, he must do so with as much truth and candor as if testifying concerning other matters as to which he is bound to answer, and if his testimony is willfully false, perjury may be assigned upon it. (*State* v. *Maxwell*, 28 La. Ann. 361.) It has been held that even where a party is erroneously sworn in his own behalf, perjury might be assigned upon his testimony, if false. *Chamberlain* v. *The People*, 23 N. Y. 85.

The cases cited by counsel for defendant on this branch of the case are either not analogous or are not in point. The case of *Boyle* v. *The State*, 17 Ohio, 222, simply holds an indictment found by a grand jury composed of less than fifteen persons having the qualifications required by the statute of that State, is not sufficient to put the accused on trial, and that a plea to the indictment that one of the grand jurors did not possess the requisite statutory qualifications, is a good plea in bar. The principal point decided in *United States* v.

*Coolridge*, 2 Gall. 364, is, that the grand jury having received the testimony of a person not under oath, the indictment was quashed, as having been irregularly found. Whether the doctrine of that case is good law or not, it has no sort of application to the point made in the case being considered. The case of *The State* v. *Froiseth*, 16 Minn. 296, is not sufficiently analogous in its facts to be an authority in point. In that case defendant was indicted for receiving greater fees than are allowed by law for his services as justice of the peace, and it was stipulated "the grand jury required the defendant to attend and be examined before them as a witness, touching the charge or matters set forth in the indictment, and that in pursuance thereof said defendant did so attend before the said grand jury, and was examined as a witness by them touching the said charge and matters, and that his name is inserted as a witness at the foot of the indictment." It was held the indictment, under the facts as stated under the stipulation, should be set aside. But that is not the case here. There can be no pretence defendant was examined by the grand jury that made the presentment of the indictment against him, touching any charge of perjury that had been made against him. No such question was being considered when his alleged false testimony was given. Other matters were being investigated by the grand jury, and not the charge contained in the present indictment. The case of *United States* v. *Farrington*, 5 Fed. Rep. 343, has been examined, and it is not thought to be sufficiently analogous, either as to the facts or principles discussed, to be an authority in support of the position taken on behalf of defendant.

Coming now to consider matters that more nearly affect the merits of the case, it is insisted it was error in the court to instruct the jury, as it did, that in determining whether the matters sworn to were material to the matter or question under investigation by the grand jury, it is not necessary for the People, upon the trial of the case, to show that a crime had

actually been committed, and that it is sufficient to show the grand jury were investigating an alleged crime, and that such evidence inquired into of defendant, by the grand jury, was material evidence in such investigation of such alleged crime. It sufficiently appears from the averments of the indictment, the offence the grand jury had been charged to investigate, and which they were attempting to do, was, whether spurious ballots had been substituted for the genuine tickets, or ballots, cast in the second precinct of the eighteenth ward, after the genuine ballots had been returned to the office of the county clerk. That was an offence against public justice, and was a matter within the province of the grand jury to investigate, and to ascertain whether any such frauds had in fact been committed. It was equally important to ascertain no such fraud had been committed in regard to the election, as to learn such fraud had been in fact committed. Any evidence that tended to establish either theory was material. It was the exact truth of the matter the grand jury had been charged by the court to ascertain. This, of course, could not be done except by the testimony of witnesses called before them,— otherwise there could be no investigation on behalf of the People, and crime would go undetected. An inquest of that character is a legal proceeding under the sanction of the law. Such an investigation would be utterly futile, and even a farce, if witnesses might testify falsely, and no perjury could be assigned on such corrupt and false testimony. There was sufficient ground for suspicion, at least, the election returns had been tampered with,—otherwise the court, it is to be presumed, would not have directed that matter to be investigated. It may have been no more than a mere suspicion so grave an offence had been committed. Even that was sufficient to set the grand jury in motion to inquire into and true presentment make of the matters given them in charge by the court. Their right to investigate did not depend upon the fact the alleged crime they were about to investigate had

actually been committed. It was sufficient the grand jury had undertaken to investigate an alleged crime, to authorize them to call witnesses before them, and if their testimony given upon such investigation is willfully and corruptly false, perjury may be assigned upon it, as is done upon false testimony given in any other legal proceedings. It is obvious in such case all testimony material to the matters before the grand jury which may tend to disclose that an offence has been or has not been committed, is important. Unless witnesses, when called before the grand jury in such cases, can be compelled to speak the truth, it would be impracticable to detect crime. The very object of the inquest is to ascertain whether crime has in fact been committed. In this case it might have been disclosed the election returns had not been corrupted, nor that any criminal use had been made of the spurious ballots that had been engraved and printed; but it was all-important to know that fact, and the grand jury had the clear right to investigate concerning it.

As has been seen in this case, the grand jury had been instructed by the court to inquire touching certain election matters arising out of a certain election held on the 4th day of November, 1884, for the choosing of certain officers, and while pursuing that investigation it became important to ascertain, first, whether spurious tickets or ballots had been substituted for genuine tickets or ballots used at the second precinct of the eighteenth ward, after the same had been returned to the office of the county clerk; and second, if such a wrong had been done, to ascertain the guilty party or parties. It had been proved spurious tickets in imitation of the genuine tickets had been engraved and printed and delivered to defendant, and it became material to learn what disposition he had made of them. It was one step in the investigation that might lead to the ascertainment of the truth of the matter being invested gated. The grand jury could not know in advance whether any crime had been committed. Concerning that fact it was

their duty to inquire. After all, it might turn out the returns made of the election in that particular precinct had not been tampered with; yet defendant's testimony given at that inquest was none the less material for that reason, and if false, perjury might be assigned on it. In *The State* v. *Schill*, 27 Iowa, 263, it was held, in an indictment for perjury in a criminal investigation before the grand jury, it is not necessary to allege the party charged with the offence that was under investigation was or was not guilty thereof, nor the facts constituting such offence. It was said in the opinion of the court, the defendant might be guilty of perjury before the grand jury though the party whose case was being investigated was innocent, and though, in fact, no such offence had been committed by him. The case of *The State* v. *Wakefield*, 73 Mo. 549, declares the same general doctrine, and it was said by the court in its opinion, "the guilt of one falsely swearing does not depend upon the results of the proceedings in which it occurred." The instruction given in this case states a correct principle of law. It was not necessary to a conviction of defendant, for the People upon the trial to show that a crime had actually been committed, yet it was proved, beyond any reasonable doubt, that over two hundred of the spurious tickets or ballots that had been engraved and printed for defendant, and delivered to him, were afterwards found in the package in the county clerk's office mixed with the genuine ballots.

The refusal of the court to give the second instruction asked by defendant is said to be error. It is a sufficient answer to the view taken that the substance of the refused instruction was contained in one that had been given, and it was not the duty of the court to give it a second time.

By the third refused instruction the court was asked to charge the jury, on behalf of defendant, that in determining the question if, in the testimony offered to show what the evidence of defendant was before the grand jury, it appears

that a question was addressed to him involving many points, and he was asked to answer as to the entire question, and the assumption of the question was incorrect, or mistaken in any one particular, it was the privilege of defendant to have answered such question in the negative, and an indictment for perjury could not be sustained to an answer given to such a question. There is no principle upon which the court could have been required to give this charge. Had it done so, the obvious effect would have been to mislead the jury. It assumes, by implication at least, what is not true,—first, that defendant was required to answer the question as an entirety; and second, that the guilt or innocence of defendant depended upon his answer to this single question. This is not correct. But aside from this view, the instruction does not state a correct principle of law. Although the question may have assumed that which was incorrect, still defendant, so far as he undertook to answer it, was obligated to speak the truth.

It is confidently insisted it was error in the court to refuse the fourth instruction asked by the defendant. By that instruction the court was asked to tell the jury if they believed, from the evidence, defendant did not, in giving his testimony before the grand jury, say that he did not receive, on or about the 21st day of November, 1884, from the printers, a package containing ballots engraved and printed as set forth in the indictment, but did say he received a package from these parties at that place and at that time, and that he did not then know what the package contained, this would not be sustaining the averment as to the language used by defendant when a witness before the grand jury. This instruction is faulty for many reasons. It assumes the guilt or innocence of the accused depends wholly on a single answer made during his examination. It might be that at one time in his examination he said he did not know what the package contained, and at another time he might have denied he had received

any package containing the spurious tickets or anything else, or it might have been proved by other evidence he did know what the package contained. These were all matters for the consideration of the jury, concerning which it was not the province of the court to instruct. The court clearly did not err in refusing that instruction.

A part of the fifth instruction asked by defendant, and refused by the court, might with great propriety have been given had it been disconnected from that which is positively vicious. It is undoubtedly the law that the evidence upon which the indictment for perjury was based must have been material to the matter then being investigated or the point in question before the grand jury, and that it devolved upon the prosecution not only to affirmatively so state, but to show its materiality. That was done. The materiality of the testimony was averred in the indictment, and sufficient proof was made at the trial. It is to be noted the same principle stated in the first clause of this instruction was in fact contained in one that was given, and the accused was in nowise prejudiced because the court did not give it a second time. That which follows this statement of a correct principle of law is a mere argument injected into the instruction, and obviously rendered it wholly vicious. The court was asked to say to the jury, "the mere ordering of spurious ballots, and the receiving of spurious ballots, alone, or taken together, are not offences under the laws of this State, and even had the defendant been guilty of ordering and receiving such ballots, that alone would not have justified an indictment against him." The giving of this paragraph of this instruction would no doubt have warranted the belief in the minds of the jury the accused was indicted for "ordering and receiving" spurious ballots, and to that extent it would have been misleading. No one would insist the mere ordering or receiving spurious ballots, with no intent to make a criminal use of them, would be an offence under the laws of the State;

but if it should appear it was intended such spurious ballots should be used in a conspiracy formed to corrupt the election returns already made, then the ordering or receiving of such ballots, in furtherance of such a conspiracy, would be an offence, and a very grave one, against the laws of the State. The accused was not indicted, as this clause of the instruction seems to assume, for merely ordering and receiving spurious ballots. That might or might not be an offence, depending upon the fact whether there was a purpose or conspiracy to make a criminal use of them. In the investigation the grand jury had been instructed by the court to make, it became material to ascertain whether any spurious ballots had been engraved and printed. That was proved. It was next material to discover whether any purpose or conspiracy existed to make any criminal use of such spurious ballots, and if so, who were the guilty parties. One way of proving that was by ascertaining who had ordered the tickets engraved and printed, who had received them, and what disposition was made of them. These facts were all material and vital to the point in question before the grand jury, and when defendant was interrogated concerning them, he ought to have spoken truthfully, or remained silent, as was his privilege to do. It was upon the alleged false testimony as to whether he had ordered or received the spurious ballots that perjury is assigned. The clause of this instruction quoted has no reference to that offence. It was for that reason highly calculated to mislead the jury, and therefore the whole instruction was properly refused.

Of the additional grounds of error suggested on the oral argument of the case, one is as to all of the instructions given on behalf of the People, that they permitted the jury to find defendant guilty "if, from the evidence, they believed him guilty beyond a reasonable doubt." Of the correctness of this form of an instruction no doubt is expressed, as it is generally used. The same expression is used in all the in-

structions asked on behalf of defendant in this case. It seems, however, to be claimed it is erroneous in cases of perjury where more than the evidence of one witness is required to convict. Originally the rule was, that in order to convict a person of perjury there must be two witnesses swearing directly adversely from the defendant's oath upon which the perjury was assigned; but the strictness in that regard has long since been relaxed, and text writers now hold, on the authority of the adjudged cases, the rule formerly observed must not be understood as establishing that two witnesses are necessary to disprove the fact sworn to by defendant, for if any material circumstance be proved by other witnesses in confirmation of the witness who gave the direct testimony of the perjury, it may turn the scale, and warrant a conviction. (1 Greenleaf on Evidence, sec. 257; 2 Russell on Crimes, 650.) It is said it is upon such evidence the jury must find the guilt of the accused beyond a reasonable doubt. That is undoubtedly true, but it is not necessary to state in every instruction the degree or quantity of evidence indispensable to a conviction for perjury, nor to state the rule of evidence in such cases, in connection with the usual formula, no conviction can be had unless the accused is proved guilty beyond a reasonable doubt. It may be stated in a separate instruction, if the accused desires to have the jury so instructed.

The alleged variance between the averments in the indictment and the proof does not exist. It is charged in the indictment the spurious ballots were ordered and received from S. B. Wright and W. H. Wright. The insistence is, such ballots were ordered and received from S. B. Wright alone, if so ordered or received at all. That is not the fact. Both the Wrights were present when the ballots were ordered, and both were interested in doing the work, and it is therefore true, in law and in fact, the spurious ballots were ordered from both of them. It is also proved past any doubt that both of them

were present when the package containing the spurious tickets or ballots was delivered to defendant.

Lastly, it is insisted the evidence is not sufficient to warrant the conviction of the accused, and the reason stated in support of that position is, that only one witness swore to the facts upon which the perjury is assigned. This is a misapprehension of the evidence. There is the testimony of more than two witnesses swearing directly to the fact the accused ordered spurious tickets or ballots to be engraved and printed. There is also the testimony of two witnesses to the other fact upon which perjury is assigned: that the package said to contain the spurious tickets or ballots was delivered to defendant. As respects the contents of the package, there is the direct testimony of one witness, and such corroborating testimony as leaves no reasonable doubt on the mind, it contained the spurious tickets or ballots that had just that afternoon been printed in such great haste by the parties delivering such package, and at the request of the defendant himself. Without entering upon any critical analysis of the evidence, it is sufficient to say it has been closely examined, and in the opinion of this court it fully warrants the conviction of the accused.

After the verdict of guilty was rendered, a motion for a new trial was made. One cause assigned in support of that motion was, that one of the jurors impaneled to try the cause, and who sat in the case, was of unsound mind. Touching the mental capacity of the juror quite a good deal of testimony was introduced, but the court was of opinion the juror was competent, and the objection was accordingly overruled. It would seem to be a sufficient answer to the position taken, it does not appear, from any affidavit or otherwise, the mental condition of the juror was not as well known to defendant or his counsel before he was accepted by them on the panel, as afterwards. If a disqualification of a juror was known to either of them before he was accepted, it can not be assigned for error after verdict. The law on this subject is so well

settled the point need not be elaborated. (*Swarnes* v. *Sitton*, 58 Ill. 155; *Fitzpatrick* v. *The People*, 98 id. 269.) But aside from this view of the law, it does not appear, from the testimony introduced in support of the motion for a new trial, the mind of the juror was so seriously impaired as to render him incompetent. Two physicians that had practiced in his family, and perhaps treated him, never discovered any disorder in his mental faculties. It seems not to have occurred to the jurors that sat with him, he was a man of unsound mind, or that he was in any way deficient in his reasoning powers or memory. It is no doubt true that at times he was eccentric, and much inclined to exaggerate, particularly as to his money and his bonds or government securities. Very few, if any, of his neighbors seem to have credited his statements in that respect, and it is shown they were really untrue. But there is no satisfactory evidence that his mind was so much affected as to disqualify him as a juror, and there were no grounds for granting a new trial for that reason.

Every phase of this case, and every point made for a reversal, has been most carefully and patiently considered, and no error has been discovered, nor has any been pointed out, of sufficient gravity to warrant the reversal of the judgment.

*Judgment affirmed.*