(No. 19317.— )

THE PEOPLE *ex rel.* Charles Ferrill, Relator, *vs.* CHARLES E. GRAYDON, Sheriff, Respondent.

*Opinion filed December 20, 1928—Rehearing denied Feb. 8, 1929.*

DUNCAN, J., dissenting.

THOMAS D. NASH, and MICHAEL J. AHERN, for petitioner.

OSCAR E. CARLSTROM, Attorney General, FRANK J. LOESCH, and DAVID D. STANSBURY, (EDWIN J. RABER, of counsel,) for relator.

Mr. JUSTICE DUNN delivered the opinion of the court:

At the last term a writ of *habeas corpus* was issued on the petition of Charles Ferrill requiring Charles E. Graydon to bring before the court the body of the relator, who was alleged to be unlawfully detained, together with the time and cause of such imprisonment and detention. The respondent made return to the writ that he had before the court the body of the relator, who was in his custody as sheriff of the county of Cook by virtue of a *capias* issued out of the criminal court of Cook county commanding him to take the body of the relator and safely keep him to answer to an indictment for conspiracy preferred against him by the grand jury, a copy of the writ being attached to the return. The relator entered a motion for his discharge and the respondent a motion for the remandment of the relator to the custody of the respondent. Briefs were filed, the cause was argued orally and submitted at the October term.

The record shows that the writ by virtue of which the relator is held by the sheriff was issued upon an indictment purporting to have been returned by the grand jury of Cook county on September 29, 1928, at the September term of that court. It is the contention of the relator that the body of men purporting to return the indictment was not a grand jury but was composed of mere intruders usurping the powers of the actual grand jury which was impaneled at the September term of the court on September 4 and was engaged in the exercise of its powers and the performance of its duties on each day of the term until and including September 30. On August 6, 1928, in accordance with the provisions of the law, a venire was issued for a grand jury for the September term of the court, and on September 4, pursuant to such venire, the grand jury was impaneled, entered upon the discharge of its duties and continued in such performance daily until and including September 30. No question exists of the legality of its impaneling or ac-

tion. On September 3, being the first day of the September term, the court ordered a special venire to be issued for a grand jury to be impaneled on September 10, and pursuant to this venire another grand jury was impaneled by the court, and it was this body which returned the indictment by virtue of which the sheriff holds the relator in his custody. If this body was a grand jury the detention of the relator is legal, otherwise it is without authority of law and its acts are without jurisdiction. (*People* v. *Brautigan,* 310 Ill. 472.) An indictment returned by such a body without jurisdiction, and the process issued on it, would be void, and a person held in custody by reason of such process would be entitled to be discharged on a writ of *habeas corpus. People* v. *Whitman,* 243 Ill. 471.

Jurisdiction over and title to the territory which now constitutes the State of Illinois was ceded to the United States on the first day of March, 1784, by the deed of Thomas Jefferson, Samuel Hardy, Arthur Lee and James Monroe, delegates of the commonwealth of Virginia in the Congress of the United States, executed by virtue of authority conferred on them by an act of the legislature of Virginia passed on December 20, 1783. Congress passed an enabling act in 1818, authorizing the people of Illinois to form a constitution and State government and providing for the admission of the State into the Union. In that same year the first constitution of the State was adopted and the State was admitted into the Union upon the same footing with the original States. This constitution did not mention the grand jury directly, but it did recognize its existence by providing in section 10 of article 8 that no person should for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or the militia when in actual service in time of war or public danger, by leave of the courts, for oppression or misdemeanor in office. The constitution of 1848 did mention the grand jury by name

but made no substantial change in the constitutional provision which by section 10 of article 13 provided that no person should be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia when in actual service in time of war or public danger. The corresponding provision in the constitution of 1870 in section 8 of article 2 is, that no person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, provided that the grand jury may be abolished by law in all cases. Neither constitution defines the grand jury. No act of the legislature has ever attempted to define the grand jury. It had its origin in the common law and has existed for many hundred years. Its constitution, organization, jurisdiction and method of proceeding were all well known features of the common law before the organization of the State of Illinois and have been recognized and adopted in all our constitutions and in legislation as it existed at the organization of the State. One of the earliest acts of the first legislature of the State was the act of February 4, 1819, (Laws of 1819, p. 3,) which declared that the common law of England, all statutes or acts of the British Parliament made in aid of the common law prior to the fourth year of King James the First, excepting the second section of the sixth chapter of 43 Elizabeth, the eighth chapter of 13 Elizabeth and ninth chapter of 37 Henry the Eighth, and which are of a general nature and not local to that kingdom, shall be the rule of decision and shall be considered as of full force until repealed by legislative authority. The conclusion follows that the State from its origin has provided

for the prosecution of violations of the criminal law by means of indictment of a grand jury, and that the grand jury is that which existed in the common law of England prior to the fourth year of King James the First, which began on March 24, 1606. No other grand jury was known to the law. No definition of it was attempted but it was referred to as an institution which needed no definition. When it was so referred to, the common law grand jury became a part of the fundamental law of the State for the prosecution of crime, and no authority has ever existed in this State for the prosecution of felonies except upon the indictment of a grand jury. By the constitution of 1870 crimes below the grade of felony may be prosecuted by information.

Where the legislature has created an office which was known to the common law and by virtue of the common law was vested with certain powers and duties, those common law powers and duties attached to the office by reason of its adoption by the constitution. It was so held in regard to the office of sheriff in the case of *Dahnke* v. *People,* 168 Ill. 102, and in regard to the office of Attorney General in the cases of *People* v. *McCullough,* 254 Ill. 9, and *Fergus* v. *Russel,* 270 id. 304; and it was further held that the officer could not be deprived of the common law functions pertaining to his office by the legislature, but new duties might be imposed.

The constitution authorizes the abolition of the grand jury by law in all cases, but we are not now considering any question of the power of the legislature to curtail or make any substantial change in the grand jury's common law powers, privileges and functions, for no such changes have been attempted. Whatever may be the power of the legislature in that respect, certainly the courts have no such power. The power of the grand jury is not dependent upon the court but is original and complete, and its duty is to diligently inquire into all offenses which shall come to its

knowledge, whether from the court, the State's attorney, its own members or from any source, and it may make presentments of its own knowledge without any instruction or authority from the court. (*United States* v. *Thompson,* 251 U. S. 407; *People* v. *Blumenfeld,* 330 Ill. 474.) The court cannot limit the scope of the investigation of the grand jury.

Some consideration was given in *People* v. *Brautigan, supra,* to the subject of the origin of the grand jury in the inquests of the hundreds and of the history of the development and progress of the institution. It is unnecessary to repeat or enlarge upon what we then said. The particular question in that case was whether the criminal court had the power to continue the existence of a grand jury beyond the expiration of the term in which it was appointed. At the August term, 1922, a grand jury was impaneled, and the same thing occurred in each succeeding month to and including the May term, 1923. On the last day of the August term it was ordered that the grand jury regularly impaneled for the August term be continued to the September term and continue its investigation in relation to certain alleged violations of the criminal law. Similar orders were entered on the last day of each term to and including the April term, 1923. The conclusion was announced in that case that at common law the grand jury sat through the term unless its duties were sooner completed, and its existence ceased with the term, and that no statute has changed this rule or authorized the court to continue a grand jury beyond the adjournment of the term; that the common law power of the court to call a special grand jury is limited to cases of offenses committed after the grand jury has been discharged or when some offender is arrested after the discharge of the grand jury; that a grand jury continued beyond the term of the court by an order entered without a compliance with the statutory method of summoning a special grand jury has no *de facto* existence where there is

another grand jury *de jure* performing the duties of such body, and that a witness cannot be punished for contempt in refusing to answer questions during an examination before the unauthorized body. Recognizing the law as thus declared, the court in the present case made no order to continue the grand jury impaneled at the various terms of the court but issued a special venire each successive term for a grand jury, and impaneled from the persons returned a special grand jury while the grand jury regularly summoned and impaneled was in existence and in the daily performance of its functions.

It was not decided in the *Brautigan case, supra,* that the issuing of a special venire for a grand jury and the impaneling of such grand jury while a grand jury regularly impaneled was in existence was unauthorized by law. This is the question presented for decision in the present case. While the statute of 1819 declared that the common law of England and the statutes or acts of the British Parliament made in aid of the common law prior to the fourth year of King James the First, with the exceptions mentioned, and which were of a general nature and not local to that kingdom, should be the rule of decision in this State, it was further declared that they should be considered of full force only until repealed by legislative authority. The legislature has full power to repeal or modify the common law as thus declared except as restrained by constitutional limitation. Our statute (Rev. Stat. chap. 78, sec. 19,) has provided a method of summoning a special grand jury, as follows: "The judge of any court of record of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it. The order for such venire shall be entered on the records of the court by the clerk thereof; and such clerk shall forthwith issue such venire under his hand and the seal of the court, and deliver the same to the sheriff, who shall execute the same by summoning, in the

same manner now provided, or that may hereafter be provided by law for summoning jurors, twenty-three persons, qualified by law, to constitute a grand jury. Such venire shall state the day on which such persons shall appear before the court." There are many statutory provisions that at certain specified terms of court in particular counties no grand jury shall be summoned, or that no criminal business shall be transacted, or that no grand jury shall be summoned except by a special order of the judge holding the court. No restraint has been imposed by the constitution upon the power of the legislature to determine at what time, under what circumstances and in what manner a grand jury may be summoned, but the matter is left entirely to the discretion of the legislature. The constitution has committed to the General Assembly the power to provide for the times of holding court in each county, and the power has been exercised by fixing the terms of court for the transaction of criminal business, of civil business and of business which does not require the presence of a jury, either grand or petit, and it has further provided that the judge of any court of record of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it. The question is committed to the discretion of the judge of the court, and the legislative act modifying the common law and authorizing the issuing of a special venire for a grand jury at any time when in the opinion of the judge public justice requires it violates no constitutional limitation. With the question of the policy or wisdom of authorizing the impaneling of a special grand jury when a grand jury regularly impaneled is performing the duties of such body we have no concern. The act authorizes the issue of a special venire for a grand jury at any time the judge shall be of opinion that public justice requires it, and we have no right to impose any further limitation on the exercise of the power.

The indictment returned against the relator was not void and his detention under the process issued upon it is not unlawful. It is therefore ordered that he be remanded to the custody of the respondent. *Relator remanded.*

Mr. Justice Duncan, dissenting.