(No. 21206.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN DAVID SHERIDAN, JR., Plaintiff in Error.

*Opinion filed June 24, 1932.*

EVERETT JENNINGS, and W. W. SMITH, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, John David Sheridan, Jr., (herein called defendant,) was by an order of the criminal court of Cook county adjudged to be guilty of a direct criminal contempt of court and sentenced to confinement in the county jail of that county for ten days. The judgment of the criminal court was affirmed by the Appellate Court for the First District. A writ of error has been sued out of this court.

On October 20, 1930, the State's attorney of Cook county filed in the criminal court of that county a petition

in which it was alleged that defendant appeared as a witness before the grand jury of that county on the 15th, 16th and 17th days of October, 1930, and gave testimony "with reference to an inquiry then being conducted by said grand jury." The petition contained allegations of the matters testified to by defendant and the nature of his testimony on each of the three days. It was charged in the petition that he disregarded the questions propounded to him before the grand jury and gave wholly irresponsive, evasive and untruthful answers; that it was apparent from the testimony given by him that his answers were so couched as to obstruct, hinder and delay the investigation being conducted by the grand jury; that his testimony before the grand jury was material and pertinent to the inquiry being conducted by the grand jury with reference to the Coal Hikers Union, Local No. 701, the Chicago Coal Teamsters, Chauffeurs and Helpers Union, Local No. 704, and the Chicago Coal Dealers and Helpers Union, Local No. 707, and that his testimony, conduct and behavior before the grand jury on said days were in open defiance of the administration of justice and wholly contemptuous of the grand jury and of the court.

On October 24, 1930, defendant appeared in court and moved to dismiss the petition because it was insufficient to charge him with contempt of court or to support any finding of contempt that might be made by the court. The motion to dismiss the petition was overruled. There was introduced in evidence a transcript of the proceedings of the grand jury and the testimony of defendant when he was before the grand jury on October 15, 16 and 17, 1930. He objected to the introduction of the transcript on the ground that the petition that had been filed was insufficient and that the evidence was irrelevant and immaterial but waived any objection that the transcript was not the best evidence of the proceedings before the grand jury. No other evidence was offered or introduced, and the court

entered its order, in which, after reciting that defendant was present in open court in person and represented by counsel and finding that the grand jury was duly and legally impaneled, the court found that "on the 15th day of October, 1930, the defendant appeared before said grand jury in response to a subpœna of this court duly served upon him, was duly sworn to testify truthfully, and thereupon did testify and say, in substance and effect, that at no time was he ever directly or indirectly connected with the Chicago Coal Hikers Union, Local No. 701, or the Chicago Coal Dealers and Helpers Union, Local 707, and that he had never received any moneys, remuneration or compensation for services rendered by him from either of these unions or for any other purpose; that the defendant did further testify and say, in effect and substance, that he had no knowledge as to how the said Chicago Coal Hikers Union, Local No. 701, and Chicago Coal Dealers and Helpers Union, Local No. 707, was organized, and did not know whether or not said unions were connected in any way with the Chicago Coal Teamsters, Chauffeurs and Helpers Union, Local No. 704, by which he was employed as a clerk;" that "on the 16th day of October, 1930, the defendant again appeared before the said grand jury in response to a subpœna of this court duly served upon him, was duly sworn to testify truthfully, and thereupon did testify and say, in substance and effect, that he did not recall ever having received any check or checks made out to currency or to himself, either directly or indirectly, from one George Barker or signed by said George Barker, and did not recall ever having cashed a check or checks signed by said George Barker;" that "on the 17th day of October, 1930, the defendant again appeared before the said grand jury in response to a subpœna of this court duly served upon him, was duly sworn to testify truthfully, and did thereupon testify and say, in substance and effect, that he had been paid half of his wages of one hundred dollars ($100) per

week, or fifty dollars ($50) per week, from the treasury of the Chicago Coal Hikers Union, Local No. 701, and that arrangements had been made for him to receive his pay in this manner from one Mr. Lynch; that he had also occupied the same office with the clerk in charge of the Chicago Coal Dealers and Helpers Union, Local No. 707, and that the clerk of said union, one Stanley Venesky, had been on the pay-roll of the Chicago Coal Teamsters, Chauffeurs and Helpers Union, Local No. 704, for which he, the defendant, was clerk, and by his answers otherwise indicated that the said Chicago Coal Hikers Union, Local No. 701, and the Chicago Coal Dealers and Helpers Union, Local No. 707, were closely connected with and a part of the Chicago Coal Teamsters, Chauffeurs and Helpers Union, Local No. 704; that he had also received numerous checks signed by George Barker, together with one Milton Booth, and had also received numerous checks signed by George Barker only, said checks being filled out by defendant in his own name and that he cashed many of said checks; that one of said checks signed by said George Barker, only, was for one thousand eight hundred and fifty dollars, ($1850,) and that he cashed said check for the said George Barker and made a payment on an automobile for the said George Barker with the moneys so received." By its order and judgment the court further found that all of the conduct of defendant took place before the grand jury while in open session, and that the evasive and dilatory attitude of defendant "and the said false and contradictory statements and the giving out of perjured testimony was contumacious, and tended to impede, obstruct and interrupt the proceedings and to lessen the dignity of the court, and was calculated to, and did, impede, embarrass and obstruct this court in the due administration of justice;" that all of the questions asked of defendant and the answers given thereto by him before the grand jury "were material and pertinent to the inquiry then being conducted by the said grand jury

with reference to the Chicago Coal Hikers Union, Local No. 701, the Chicago Coal Teamsters, Chauffeurs and Helpers Union, Local No. 704, and the Chicago Coal Dealers and Helpers Union, Local No. 707, and the conduct of the affairs of said unions."

The first contention of defendant is that the petition filed by the State's attorney was insufficient to charge him with conduct constituting contempt of court because it did not contain an allegation that the grand jury was investigating any complaint or charge of crime committed in Cook county or an allegation of the object of the questions asked defendant when he was before the grand jury. It is a sufficient answer to this contention to state that the alleged contemptuous conduct of defendant was before the grand jury, which was a constituent part of the criminal court, and his conduct was therefore in the presence of the court and if contemptuous was a direct contempt, and it was unnecessary to file a petition or make a formal charge by affidavit in order that the court might punish him for the contempt. (*People* v. *Cochrane*, 307 Ill. 126; *People* v. *Sherwin*, 334 id. 609.) Since it was not necessary or essential that the petition be filed it is unnecessary to consider whether the allegations of the petition that was filed were sufficient to charge conduct constituting contempt of court.

Defendant further contends that the judgment should be reversed because it does not appear from any finding of the court in its order or from the evidence that the grand jury was investigating any complaint or charge of crime at the time he gave his testimony before it. In this connection it is stated that a grand jury has no right or jurisdiction to conduct an investigation into the personal affairs of citizens or the manner of conducting business by individuals or organizations when there is no charge of a criminal offense involved. The grand jury is a necessary constituent part of a court having general criminal jurisdiction. (*People* v. *McCauley*, 256 Ill. 504; *Boone* v. *People*,

148 id. 440.) The grand jury's power to inquire into all offenses against the criminal law is original and complete and extends to all offenses that may come to its knowledge from any source. (*People* v. *Graydon,* 333 Ill. 429.) The order of the criminal court contains a finding of the court that the questions asked defendant and the answers made thereto by him were material and pertinent to the investigation being conducted by the grand jury. The order does not specifically find that the investigation of the grand jury was in relation to an offense against the criminal law. On the other hand, there is no showing in the record that there was not an alleged offense against the criminal law which was the subject of investigation at that time. In *People* v. *McCauley, supra,* it was contended that an indictment was invalid because returned by a grand jury that had been recalled after having been once discharged, and the court said: "In the absence of any showing to the contrary it will not be presumed that the grand jury considered and acted upon matters not properly before it." In this case it will certainly not be presumed that the grand jury was making an investigation of the business affairs of the labor unions mentioned in the court's order without information that there had been an offense against the criminal law in the conduct of the affairs of those organizations. On the other hand, the presumption will be indulged, in the absence of any showing to the contrary, that the investigation of the grand jury was one that it had the right and power to conduct, and the finding of the court in its order in this respect is sufficient.

The transcript of the testimony given by defendant before the grand jury clearly shows that in giving his testimony he answered the questions asked of him in an evasive and deceptive manner, that his answers were in many cases contradictory, and that in giving his testimony he attempted to deceive rather than enlighten the grand jury concerning the facts in the matter under investigation. Such conduct

constituted contempt of court. (*People* v. *Gard,* 259 Ill. 238; *Berkson* v. *People,* 154 id. 81.) The findings made by the court in the order entered are sustained by the transcript of the testimony given by defendant before the grand jury and are sufficient to show that he was guilty of contempt of court.

The judgment of the Appellate Court for the First District is affirmed.                    *Judgment affirmed.*