(No. 36110.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error,
*vs.* TRANNIE POLK, Defendant in Error.

*Opinion filed April 26, 1961.*

KASSLY, WEIHL, CARR & BONE, of East St. Louis, (REX CARR, of counsel,) for defendant in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and JOHN J. HOBAN, State's Attorney, of Belleville, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This cause is before this court on writ of error by the People of the State of Illinois from an order of the circuit court of St. Clair County, Illinois, dated April 22, 1960, quashing the indictment returned against Trannie Polk charging him with perjury while testifying before a St. Clair County grand jury in October of 1959. The circuit court held that the matter being investigated had been outlawed by the Statute of Limitations and, therefore, the defendant did not commit perjury.

As appears from the indictment, the defendant, a member of the East St. Louis Police Department, was called as a witness in a grand jury investigation of "alleged irregularities and unlawful acts alleged to have been committed by members of the East St. Louis Police Department." Apart from this, the record fails to indicate more precisely the scope of the investigation.

The defendant was examined on October 23, 1959, by the grand jury concerning a robbery which took place at the Paramount Club on September 17, 1955. An indictment was returned on December 22, 1959, alleging that the defendant falsely swore that he did not persuade certain witnesses to change their identification of one of the robbers of the Paramount Club. These are the precise questions and answers:

"Q. I will ask you to state whether or not, you called Isaac Stewart, Rudolph Marian and Robert James to the East St. Louis Police Station on the 26th day of April, 1956?

A. I think they came down to the station on that day if it was the day Eddie Baker was brought back from Chicago.

Q. Is it not true that you persuaded these three men, Isaac Stewart, Rudolph Marian and Robert James, to say that they could not identify the prisoner Eddie Baker as one of the men who robbed the Paramount Club on the 17th day of September, 1955?

A. No I did not.

Q. Are you now saying that you did not persuade these three men to change their previous identification of Eddie Baker?

A. I am saying that I did not ask them men to do that."

and the indictment continued in this language:

"WHEREAS, in truth and in fact, the said Trannie Polk, did persuade Isaac Stewart, Rudolph Marian and Robert James, to change their previous identification of

Eddie Baker as one of the persons who participated in the robbery of the Paramount Club on the 17th day of September, 1955, and to say that they could not identify the said Eddie Baker, and so the Grand Jurors aforesaid, upon their oaths aforesaid, do say that the said Trannie Polk, on the 23rd day of October, 1959, while testifying before the Grand Jury aforesaid, did, in manner and form aforesaid, commit wilful and corrupt perjury against the peace and dignity of the People of the State of Illinois, and contrary to the form of the Statute in such case made and provided."

Defendant filed a motion attacking the power and authority of the grand jury to investigate the matter about which defendant was interrogated; attacking the failure of the indictment to show that the grand jury had the power and authority to conduct such an investigation; alleging that the indictment on its face showed that the defendant swore to a matter not material to an investigation within the power and authority of the grand jury to conduct; and attacking the sufficiency of the indictment itself to charge defendant with the crime of perjury; asserting that the alleged testimony of defendant is insufficient upon which to predicate a charge of perjury.

The circuit court of St. Clair County allowed defendant's motion, selecting as its basis for the order that the matter being investigated had been outlawed by the Statute of Limitations and therefore the defendant did not commit perjury; that, in effect, the grand jury lacked the power and authority to make inquiry of the defendant about an incident on which the Statute of Limitations had run.

Neither the Illinois constitution nor the legislature has attempted to define the powers of the grand jury. It has its origin in the common law and has existed for many hundreds of years. Its construction, organization, jurisdiction and method of proceeding were all well known features of the common law before the organization of the State

of Illinois and have been recognized and adopted in all our constitutions and in legislation as it existed at the organization of the State. (*People ex rel. Ferrill* v. *Graydon,* 333 Ill. 429, 432.) While the grand jury is a necessary constituent part of a court having general criminal jurisdiction, (*People* v. *Sheridan,* 349 Ill. 202,) its powers are not dependent upon the court but are original and complete. Its duty is to diligently inquire into all offenses which shall come to its knowledge whether from the court, the State's Attorney, its own members, or from any source, and it may make presentments of its own knowledge without any instruction or authority from the court. *People ex rel. Ferrill* v. *Graydon,* 333 Ill. 429.

Although we have stated a court cannot limit the scope of the grand jury's investigation, (*People ex rel. Ferrill* v. *Graydon,* 333 Ill. 429,) it is equally true that a grand jury has no right or jurisdiction to conduct an investigation into the personal affairs of citizens when there is no charge of a criminal offense involved, or where it otherwise lacks jurisdiction of the subject matter. *Pankey* v. *People,* 1 Scam. 80; *People* v. *Rogers,* 348 Ill. 322.

It appears from the perjury indictment here before us that the subject matter of the grand jury investigation had been an investigation of "alleged irregularities and unlawful acts alleged to have been committed by members of the East St. Louis Police Department, in the City of East St. Louis in said County of St. Clair * * *." While the perjury indictment does not specifically allege that the investigation being conducted was in relation to a specific criminal offense, there is, on the other hand, no showing in the record that there was not an alleged offense against the criminal law of the State of Illinois which was the subject of investigation at that time. In the absence of any showing to the contrary, the presumption will be indulged that the investigation by the grand jury was one that it had the right and power to conduct. (*People* v. *Sheridan,* 349

Ill. 202; *People* v. *McCauley,* 256 Ill. 504; *Mackin* v. *People,* 115 Ill. 312.) Our decision in *Pankey* v. *People,* 1 Scam. 80, is not in point as there the record clearly showed the subject matter under investigation by the grand jury to be civil in nature, and not criminal. See also 22 A.L.R. 1366.

It is defendant's position that, because he was asked a question or questions relative to a robbery which was no longer an indictable crime because of the Statute of Limitations, his false swearing was not material to any matter within the power of the grand jury to investigate and hence not perjury.

Nowhere in the record is there any indication, either in the charge to the grand jury or the testimony heard by it prior to the alleged false answers, that the subject matter of the grand jury investigation was barred from prosecution by the Statute of Limitations. The record, moreover, in no way shows that activities occurring in 1955 could not under the law of Illinois, of themselves or as part of a course of conduct, be indictable offenses. (*E.g. People* v. *Konowski,* 378 Ill. 616, 621; *People* v. *Barrett,* 405 Ill. 188; see 102 U. of Pa. L. Rev. 630.) The Statute of Limitations is a defense which may or may not be urged by a defendant. Furthermore, there may have been a tolling of the Statute of Limitations by absence from the State, which of course may destroy such a defense.

Notwithstanding the fact that the grand jury's investigation may have ultimately revealed that prosecution of such remote activity was barred or otherwise not itself indictable, defendant's testimony given at that inquest was nonetheless material for the purposes of the investigation. *Mackin* v. *People,* 115 Ill. 312.

In the *Mackin case* the court had for consideration an indictment charging perjury, wherein the judge presiding in the criminal court charged the grand jury to inquire into matters arising out of a certain election on the 4th day of November 1884, where the point in question was

whether certain false and imitated election ballots had been unlawfully substituted for genuine ballots used at the election. Upon that inquiry it was alleged that it became material whether defendant did employ persons to print ballots and that he did obtain from the printers a package of ballots in imitation of the ballots used in the election under investigation. The defendant denied before the grand jury that he was so involved. On the trial the court instructed the jury that in determining whether the matters sworn to were material to the question under investigation by the grand jury it was not necessary for the People to show that a crime had actually been committed. In sustaining the indictment the court (p. 323) said: "* * * and that it is sufficient to show the grand jury were investigating an alleged crime, and that such evidence inquired into of defendant, by the grand jury, was material evidence in such investigation of such alleged crime. It sufficiently appears from the averments of the indictment, the offence the grand jury had been charged to investigate, and which they were attempting to do, was, whether spurious ballots had been substituted for genuine tickets, or ballots * * *. That was an offence against public justice, and was a matter within the province of the grand jury to investigate. * * * An inquest of that character is a legal proceeding under the sanction of the law. Such an investigation would be utterly futile, and even a farce, if witnesses might testify falsely, and no perjury could be assigned on such corrupt and false testimony. * * *. Their right to investigate did not depend upon the fact the alleged crime they were about to investigate had actually been committed. It was sufficient the grand jury had undertaken to investigate an alleged crime, to authorize them to call witnesses before them, and if their testimony given upon such investigation is willfully and corruptly false, perjury may be assigned upon it, as is done upon false testimony given in any other legal proceedings. It is obvious in such case all testimony

material to the matters before the grand jury which may tend to disclose that an offence has been or has not .been committed, is important. Unless witnesses, when called' before the grand jury in such cases, can be compelled to . speak the truth, it would be impracticable. to detect crime. * * * In *The State* v. *Schill,* 27 Iowa, 263, it was held; in an indictment for perjury in a criminal investigation before the grand jury, it is not necessary to allege the party charged with the offence that was under investigation was or was not guilty thereof, nor the facts constituting such offence. It was said in the opinion of the court, the defendant might be guilty of perjury before the grand jury though the party whose case was being investigated was innocent, and though, in fact, no such offence had been' committed by him."

Defendant relies on the case of *Bennett* v. *District Court of Tulsa County,* 81 Okla Cr. 228, 162 P.2d 561. The facts therein indicate that a Tulsa County, Oklahoma, grand jury had been charged to investigate an alleged criminal conspir-. acy, all the overt acts of which clearly appeared from the outset to have occurred in Oklahoma County, Oklahoma; all such overt acts, moreover, had occurred more than three years prior to the date of the indictment action in Tulsa County. The defendant, Bennett, who had testified before the grand jury, was subsequently indicted by the Tulsa grand jury for the conspiracy which had been the subject of investigation. The defendant's motion to quash the indictment was allowed by the trial court and affirmed by the Oklahoma Criminal Court of Appeals (see *State of Okla-. homa* v. *Bennett,* 81 Okla. Cr. 206, 162 P.2d 581), on the ground that the Tulsa county trial court had been without jurisdiction of the alleged offense because of its occurrence wholly in another county and because prosecution was barred by a three-year Statute of Limitation. Defendant, however, was also indicted for perjury committed before the Tulsa grand jury in the course of its investigation. The

Criminal Court of Appeals in the case cited by defendant, 162 P.2d 561, quashed the perjury indictment because: "All the evidence before the grand jury revealed that if any offense had been committed it had been committed in Oklahoma County and not in Tulsa County * * *" 'and therefore the questions asked were "not material to the issue before the grand jury," inasmuch as "where a court or body does not have jurisdiction of the subject matter, perjury cannot be based upon false testimony given at such hearing or trial * * * neither the court nor the grand jury had jurisdiction of the subject matter * * *." The court defined "the subject matter so far as this perjury case is concerned (as being) Did the grand jury in Tulsa County have the right * * * to investigate a crime which the evidence before it clearly showed was committed, if at all, in Oklahoma County?"

It is clear that the *Bennett* decision cited by defendant premised the lack of grand jury authority to investigate upon a basis quite distinct from defendant's contention in the present case. There is nothing in the record which even remotely suggests the subject matter of the investigation charged to the grand jury or the acts constituting the subject matter of the particular question or questions asked occurred beyond the borders of St. Clair County. In the absence of the record affirmatively showing such fact, there is the presumption that the grand jury had "jurisdiction of the subject matter," and hence could make lawful inquiry of the activities occurring in 1955, even though after complete investigation it may be revealed that prosecution of such activity is barred by the Statute of Limitations. The entire implication of the *Bennett* decision is that, absent the venue problem, the perjury indictment would have been good. This is our interpretation of the language used by the Oklahoma court, in distinguishing their case from *Mackin* v. *People* (p. 567): "There was no question of the court's jurisdiction and the right of the grand jury to con-

duct the investigation. There was jurisdiction of both subject matter and the person. The crime had been committed within the venue of the county where the charge was filed. It was the duty and right of the grand jury to make this investigation under these facts."

It is indeed reasonably possible that inquiry of conduct occurring in 1955, could be one step in the investigation that might lead to the ascertainment of the truth of the matter charged to and being investigated by the grand jury. These facts were for that reason material and vital to the grand jury's investigation.

In *Blair* v. *U.S.* 250 U.S. 273, 63 L. ed. 979, the defendant refused to answer questions in a grand jury investigation. It appears that the Federal grand jury of the Southern District of New York was making inquiry concerning the Corrupt Practice Act and its infringement in a primary election held in the State of Michigan, on August 27, 1918. Defendant's refusal to answer questions was based upon the claim that the Corrupt Practice Act was invalid and that the grand jury was without jurisdiction to investigate a primary election in the State of Michigan. The court in adjudging defendant guilty of contempt for his refusal to answer questions stated that "witnesses are not entitled to take exception to the jurisdiction of the grand jury * * *. In truth it is, in the ordinary case, no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not." Defendant is "not entitled to raise any question about the constitutionality of the statute under which the grand jury's investigation was conducted."

In *State* v. *Kasherman,* 177 Minn. 200, 224 N.W. 838, the court said: "A witness before a grand jury, no personal privilege of his own being involved, may not refuse to answer questions because they seem to relate only to an offense, the prosecution of which is barred by the Statute of Limitation. Proof of an outlawed crime may very well be of the

highest importance to a grand jury. It may lead to the discovery of a similar crime, the prosecution of which is not barred by the statute."

Another case relied upon by defendant, *People* v. *Blumenfeld,* 330 Ill. 474, is found to throw little light upon the problem.

. The last contention made by defendant relates to the sufficiency of the indictment. It is his contention that the indictment fails to contain an explicit statement as to when and where he allegedly persuaded the witnesses to change their identification; that it fails to state that the robbery of the Paramount Club took place in St. Clair County; that the questions asked of defendant do not reveal just what defendant denied doing, and were unspecific, vague and general in nature so as not to be susceptible to an interpretation which, even if the answers were proved to be false, would be the firm legal basis for a perjury conviction.

The sufficiency of the indictment is to be tested by section 227 of division I of the Criminal Code (Ill. Rev. Stat. 1959, chap. 38, par. 475) which pertains solely to the sufficiency of pleadings in perjury and subornation of perjury cases. By its terms an indictment charging perjury is declared sufficient when it sets forth the substance of the controversy or matter in respect to which the offense was committed and before whom the oath alleged to be false was taken, and when it avers that such court or authority had full power to administer the same, with proper allegations of the falsity of the matter on which the perjury is assigned. *People* v. *Curtis,* 98 P.2d 228.

A difficult question arises when we consider the particular alleged false statements made by defendant. The gist of the indictment is that defendant testified that he did not "persuade these three men . . . to say they could not identify the prisoner" when in fact he did *persuade* them to so change their previous identification of the prisoner.

It is apparent that the term "persuade" is used in the

indictment as a transitive verb, and as commonly understood requires that objective acts of defendant caused a subjective mental condition in the three men referred to. It is obvious that defendant could not know as a fact that any acts of his were the causative factor in the change of mind alleged. He could of course have testified as to his acts and conversations, and as to these perjury would lie if untrue.

While courts will not quash a perjury indictment merely because the matter of proof is difficult, (Anno: 66 A.L.R.2d 791,) the charge must be susceptible of legal proof. In the case at bar we think that the inquiry addressed to defendant called for a conclusion both as to the state of mind of others and the causative effect of defendant's acts. Since the answer of defendant was not one of fact, but rather a conclusion that could be drawn only from unascertainable premises, we do not feel that perjury will lie. 41 Am. Jur., Perjury, p. 6.

We, therefore, conclude that the trial court properly quashed the indictment. The judgment of the circuit court of St. Clair County is accordingly affirmed.

*Judgment affirmed.*