**UNITED STATES of America, ex rel., Benjamin J. GIBSON, Petitioner,**

v.

**Kenneth McGINNIS, et al., Respondents.**

No. 91–2025.

United States District Court, C.D. Illinois.

July 31, 1991.

---

Arthur J. Inman, Peoria, Ill., for plaintiff.

Nathan P. Maddox, Asst. Atty. Gen., Springfield, Ill., for defendants.

ORDER

BAKER, Chief Judge.

In November, 1990, Benjamin Gibson applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As explained below, the court now dismisses two of Gibson's

three claims and orders both parties to address his remaining claim in more detail.

## FACTS

In March, 1981, Gibson was arrested in Nevada for the murder of Stephen Butler, whose body had been found hidden in a cesspool in Manito, Illinois. According to the police, Gibson and Butler were itinerant iron workers who travelled from state to state looking for work. In December, 1980, after passing through Colorado, they were in the central Illinois area, each visiting family members. The indictment charged that on December 24, 1980, Gibson drove with Butler to a remote section of an Illinois state forest, where he shot Butler with a .357 magnum pistol. According to the state, Gibson then sold Butler's personal property before heading to a new job in Nevada.

Gibson's defense at trial was that he and Butler were involved in a drug deal which went sour. The men to whom they were to sell the drugs, according to Gibson, shot and killed Butler in the state forest, fleeing the scene with the drugs. Gibson then disposed of Butler's body. He claimed that he did not inform the police of the incident because he feared for his family's safety and because the drug deal which precipitated the murder was illegal. After staying in Illinois for a few weeks, Gibson headed to Nevada for another job, where he was later arrested.

Following a jury trial in the Circuit Court of Mason County, Illinois, Gibson was sentenced to 25 years imprisonment for murder. His conviction was affirmed by the Illinois Appellate Court. *People v. Gibson*, 109 Ill.App.3d 316, 64 Ill.Dec. 787, 440 N.E.2d 339 (1982). The Illinois Supreme Court refused to grant Gibson leave to appeal. In August, 1982, Gibson filed a petition in the Illinois courts seeking post-conviction relief. That petition was dismissed by the trial court after an evidentiary hearing. The Illinois Appellate Court affirmed, *People v. Gibson*, No. 4–84–0810, slip op. 137 Ill.App.3d 1163, 101 Ill.Dec. 813, 499 N.E.2d 180 (Ill.App.Ct. December 4, 1985), and the Illinois Supreme Court

again refused to grant Gibson leave to appeal.

In November, 1990, Gibson filed a petition for a writ of habeas corpus in federal court. The respondents answered the petition in April, 1991.

## DISCUSSION

As the court has noted in its previous orders, Gibson advances three grounds for habeas relief. After examining the merits of the claims, the court denies both Gibson's Fourteenth Amendment due process claim and his Sixth Amendment ineffective assistance of counsel claim, and orders the parties to discuss in more detail Gibson's remaining Sixth Amendment claim.

### *Due Process Claim*

■ Gibson claims that several procedures employed during his trial were so unfair that his Fourteenth Amendment right to due process was violated. Because federal habeas courts do not sit to correct state criminal procedures, only if Gibson proves that the procedures employed by Illinois rendered his trial fundamentally unfair is he entitled to relief. *Lee v. Flannigan*, 884 F.2d 945, 952–53 (7th Cir.1989). The court concludes that Gibson has failed to sustain this burden.

### Venue Claim

■ First, Gibson claims that his right to due process was violated when the state tried him in Mason County, Illinois, even though the indictment charging him with murder was delivered by a grand jury convened in Tazewell County, Illinois. The Illinois Appellate Court spent most of its opinion on Gibson's direct appeal discussing this issue, concluding that, under state law, the issue was one of venue only, not jurisdiction. Accordingly, the state appellate court rejected Gibson's claim that Mason County was without jurisdiction to try him. Gibson attempts to convert this issue of Illinois criminal venue law into a federal constitutional issue by claiming that by trying him in one county when the indictment was delivered by a grand jury in an adja-

cent county, the state denied him a fundamentally fair trial.

The court cannot agree. Precisely how a state divides its judicial power is within the province of the state, not the federal courts. The Constitution is only implicated if the state's venue procedures are so arbitrary and inconvenient that a fair trial is precluded.[1] Here, Gibson has not asserted—and the court is hardpressed to see how he could have plausibly asserted—that he was denied fundamental fairness by being tried in an adjacent Illinois county. Because there were no known witnesses to the murder and because the crime occurred near the border of two rural counties, Illinois officials could not determine with certainty which county had proper venue. Gibson was not tried in a remote place where venue was inconvenient or where witnesses and evidence could not be procured easily. *Cf. Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 245–46, 84 S.Ct. 769, 772–73, 11 L.Ed.2d 674 (1964) (under Sixth Amendment, federal defendant cannot be tried in an inconvenient forum). In fact, Gibson has not explained how being tried in Mason as opposed to Tazewell County inconvenienced him at all, much less rendered his trial fundamentally unfair. Under these circumstances, the court must deny his claim.

### Evidentiary Claim

■ Second, Gibson claims that his right to due process was violated when the state trial court admitted irrelevant and highly prejudicial evidence against him. Specifically, witness Don Stear testified that a few days after the shooting, Gibson threatened him with the same kind of gun that may have been used to kill Butler by pointing the gun at his face and saying, "I could blow you away now." Vol. XIV, at 79. Gibson argues that this testimony was irrelevant, highly prejudicial, and merely served to portray him before the jury as a violent person who was capable of pointing a loaded gun at an unarmed companion.

■ Because the admissibility of evidence is a matter of state criminal procedure, however, a federal habeas petitioner is entitled to relief only if he or she is able to prove that the probative value of the evidence admitted is "greatly outweighed by its prejudicial effect," thereby rendering the trial fundamentally unfair. *Flannigan*, 884 F.2d at 953.[2] Here, there is no question that testimony concerning the incident with Stear could have had a prejudicial effect on the way Gibson was viewed by the jury. Yet, as the state trial and appellate courts noted, the testimony certainly was relevant to proving that Gibson was in possession of a gun similar to that used in the crime and to proving that Gibson's state of mind was erratic a few days after the shooting. The court is unable to conclude that the possible prejudicial effect of Stear's testimony so outweighed the legitimate uses of his testimony that the entire trial was rendered fundamentally unfair.

### Prosecutorial Misconduct Claim

Finally, Gibson claims that his right to due process was violated by the prosecutor's conduct during the trial. Before examining the merits of this claim, a procedural point must be resolved. Despite this court's express holding in a previous order

---

**1.** Although the Sixth Amendment contains criminal venue provisions, that Amendment is directed to the federal government, not the states. Thus, a state prisoner's improper venue claim must be shown in a habeas proceeding to violate the due process clause of the Fourteenth Amendment.

**2.** The respondents' answer appears to argue that the standard to be applied by this court is whether the admission of the evidence by the trial court was an abuse of discretion. That is indeed the correct standard under Illinois law and procedure. Accordingly, the state appellate court in this case used that standard in analyzing whether the admission of Stear's testimony was proper under Illinois law. In this federal habeas proceeding, however, that state standard has no application whatsoever. As the Supreme Court and the Seventh Circuit repeatedly have held, a state trial court's allegedly improper admission of evidence implicates the Constitution only if the admission violates the due process clause of the Fourteenth Amendment by rendering the trial fundamentally unfair. The analysis to be applied in determining whether that federal standard has been met is found in federal, not state, law.

that it would not find a procedural default and that it intended to reach the merits of Gibson's prosecutorial misconduct claim, *see* Order of February 11, 1991 at 3 n. 2, the respondents nevertheless have insisted that Gibson has defaulted the claim by failing to raise it in his post-trial motion as required by Illinois procedure. According to the respondents, Gibson therefore must demonstrate good "cause" for the default and actual "prejudice" resulting from the default before this court can reach the merits of the claim. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

As noted in this court's previous orders, the court disagrees. Gibson need not demonstrate "cause and prejudice" and the court will reach the merits of his prosecutorial misconduct claim. Because the Supreme Court very recently altered the rule concerning when a claim has been defaulted in the state courts, however, some further explanation is warranted. To review briefly, under *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), a federal habeas court was free to reach the merits of a constitutional claim—even if the state court opinions in the case indicated that the claim had been procedurally defaulted under state procedural rules— unless the state courts "clearly and expressly" relied solely on the state procedural default when dismissing the claim. 489 U.S. at 263, 109 S.Ct. at 1043 (citations omitted). The Supreme Court reasoned that if the state court opinion did not sufficiently reveal whether the state court's dismissal of the constitutional claim was based on an examination of the merits of the constitutional claim or on a state imposed procedural bar, it was proper for a federal habeas court to presume that the state court examined the merits of the constitutional claim, and thus it was proper for the federal habeas court to reach the merits of the claim without a showing of "cause and prejudice." *Id.*

In interpreting this rule, the Seventh Circuit held that if a state court determined that a claim should be dismissed because of a state procedural bar, but then the state court nevertheless went on to examine the merits of the claim in order to determine whether the bar should be waived on the grounds that fundamental fairness demanded it, the plain statement rule of *Harris* had not been met. *Rogers–Bey v. Lane,* 896 F.2d 279, 281–82 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990). In other words, if the state procedural bar was imposed only *after* the state court examined the merits of the constitutional claim, a federal habeas court could not be certain that the procedural bar was truly independent of federal law. In such a case, the federal habeas court could reach the merits of the claim. As the Seventh Circuit held, "[T]he state court must not only rely on the procedural default, it must actually state that it is doing so and that other grounds are reached only in the alternative." *Id.* at 282.

In *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), however, the Supreme Court limited the *Harris* presumption, holding that it "applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Id.* at ——, 111 S.Ct. at 2559. Although the effect of this new rule is unclear, it apparently means that when a federal habeas court examines a state court opinion in order to determine whether a federal claim has been defaulted, the federal habeas court must look at more than whether the state court opinion is ambiguous. *See id.* at ——, 111 S.Ct. at 2561–63. Before resolving any ambiguity in favor of federal review, the federal habeas court must first closely examine the state court opinion and the state's procedural rules in order to determine whether the state court which issued the ambiguous opinion intended to reach the merits of the federal claim. *See, e.g., id.* at ——–——, 111 S.Ct. at 2559–63 (even though the Virginia court's opinion was ambiguous as to the precise reasons for dismissal of petitioner's federal claim, because the state

court's opinion did not directly address the merits of the federal claim and because Virginia procedural rules did not call for a review of the merits before imposing a procedural bar, the Virginia court's dismissal could not "fairly" be said to rest on federal law, and thus the *Harris* presumption did not apply). After *Coleman*, only if there is "good reason to question" whether a state court dismissal was based entirely on state law will the *Harris* presumption apply. *Id.* at ——, 111 S.Ct. at 2559.

■ Here, the court finds that there is "good reason to question" whether Gibson's prosecutorial misconduct claim was dismissed solely on independent state procedural grounds. The section of the Illinois Appellate Court's opinion which discusses his prosecutorial misconduct claim reads in full:

> Defendant next complains of three instances of prosecutorial misconduct. We have examined the record with care and find no validity to the objections. None of them has been preserved in defendant's post-trial motion and they are therefore waived. Furthermore, the evidence in the case was not closely balanced, so the objections cannot be considered plain error.

*People v. Gibson*, 109 Ill.App.3d 316, 324–25, 64 Ill.Dec. 787, 440 N.E.2d 339 (1982) (citations omitted). Although the state court opinion notes that the claim is procedurally barred, it also "fairly appears" from the opinion that the state court's decision rested on a review of the merits of the federal claim in order to determine whether plain error would result if the procedural bar were imposed. Although the Supreme Court in *Coleman* expressly refused to answer whether a state court's cursory examination of the merits of a federal claim before imposing a procedural bar results in application of the *Harris* presumption, —— U.S. at ——, 111 S.Ct. at 2559, the court finds that the Seventh Circuit's rule in *Rog-*

ers–*Bey* survives *Coleman:* A state court's examination of the merits of a federal claim—even if only to determine whether it would be fair to impose a state procedural bar—constitutes sufficient predicate to apply the *Harris* presumption. Therefore, the court cannot conclude that Gibson defaulted his claim and, accordingly, the court will examine the merits of his prosecutorial misconduct claim without first requiring a showing of "cause and prejudice."

■ Having gone this far to reach the merits of the claim, however, the court now concludes that Gibson's right to due process was not violated by the prosecutor's conduct. Gibson's strongest contention regarding the prosecutor's conduct focuses on the prosecutor's closing argument.[3] During that argument, the prosecutor attempted to restate George Shaw's testimony to the jury by claiming that Gibson told Shaw, "They got the gun, they got the body, they got everything, they got me. Maybe I should just cop a deal or a plea and get me an attorney to make the best deal I can." Vol. XVIII, at 39. Gibson argues that this assertion misstated the evidence to such a degree that he was denied a fair trial.

■ To gain relief on the basis of prosecutorial misconduct, a habeas petitioner must prove that the prosecutor's remarks, viewed in isolation, were improper and that the improper remarks, viewed in the context of the entire case, so infected the trial with unfairness that the outcome of the trial must be doubted. *See Alerte v. Lane*, 725 F.Supp. 936, 942 (N.D.Ill.1989) (citing *United States v. Hernandez*, 865 F.2d 925, 927–28 (7th Cir.1989)). There are several factors that must be examined when determining what effect improper remarks have had on the outcome of a trial, including (1) whether the comments are invited by defense counsel, (2) whether the trial court issued curative instructions, (3) whether the defense had an opportunity to

---

**3.** Gibson actually charges the prosecutor with several instances of misconduct, including wrongfully implying that Gibson had committed other crimes and making references to prohibited evidence. Assuming that each of these in-

stances has been preserved for federal habeas review, the court finds that none merits discussion; none of them presents a colorable due process violation.

respond to the improper remarks, and (4) whether the weight of the evidence is so overwhelming that the improper remarks had no effect on the outcome of the trial. *See id.* (citing *U.S. v. Pirovolos,* 844 F.2d 415, 426 (7th Cir.1988). In addition, a court must examine whether the remarks directly violate a criminal defendant's constitutional rights. *See id.* at 942–43.

Here, the prosecutor's remark did misstate the evidence, at least in some respects. George Shaw did testify that Gibson told him that the Illinois police had the gun as well as some other evidence of the crime. He did not, however, testify that Gibson told him that he felt the police "had him." Nor did Shaw testify that Gibson told him that he was considering "copping" a plea. Yet, in the context of the entire trial, the court cannot conclude that the remark rendered the trial fundamentally unfair. The remark disparaged no specific right of Gibson's, the defense objected to the remark immediately, and the trial court promptly issued a curative instruction. The remark was a passing reference and the prosecutor did not return to it after being corrected. Given the evidence as admitted, the court must deny Gibson's claim.[4]

*Ineffective Assistance of Counsel Claim*

Gibson claims that his Sixth Amendment right to effective trial counsel was violated because his counsel (1) failed to inform Gibson that his family was receiving protection and, therefore, Gibson could testify to the identity of the actual murderer without fearing for his family's safety; (2) failed to attempt to have the trial moved to Tazewell County; and (3) informed the jury that Gibson disposed of the victim's body. Gibson claims that this activity amounted to constitutional ineffectiveness.

■■■■ The standard used to judge a challenge to a conviction based upon the

Sixth Amendment right to effective counsel is well-established. The Supreme Court has held that to prove a violation of the right, a habeas petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). In determining whether counsel was deficient, judicial scrutiny of counsel's acts is to be "highly deferential" and legitimate trial strategy is not to be second-guessed. *Id.* at 689, 104 S.Ct. at 2065.

■■■■ Before proceeding to the merits of Gibson's claims, one brief procedural point must be addressed. As noted above, Gibson brought a claim of ineffectiveness of counsel in state court by using the Illinois post-conviction procedure. The state trial court held a hearing on the issue before denying Gibson's claim and the Illinois Appellate Court affirmed that denial. In the absence of proof that the hearing which was provided to Gibson was inadequate, the factual findings of those state courts are entitled to a presumption of correctness in this court. 28 U.S.C. § 2254(d); *see Andersen v. Thieret,* 903 F.2d 526, 529–30 (7th Cir.1990).

■■■■ Gibson's first complaint concerning his trial counsel is that his counsel failed to inform Gibson that his family was receiving protection and that, therefore, Gibson could testify to the identity of the actual murderer without fearing for his family's safety. After reviewing the evidence presented at Gibson's post-conviction hearing, the Illinois Appellate Court found that Gibson's family in fact had *not* been placed in protective custody. *People v. Gibson,* No. 4–84–0810, slip op., at 4 (Ill.App.Ct. December 4, 1985). The evidence presented at Gibson's post-conviction hearing bears out that Gibson's family received, at

---

4. The remark in question involved the testimony of George Shaw. In determining what effect the remark—standing alone—had on the trial, the court examines the evidence as the evidence was admitted by the trial court. As noted below, however, the court doubts that the testimony of Shaw should have been admitted at all.

Thus, although the misstatement in isolation does not describe a violation of constitutional due process, if the court is eventually called upon to determine whether the admission of Shaw's testimony itself was harmless, the prosecutor's remark concerning that testimony may yet be relevant.

most, one night in a motel without police guard. May 29, 1984 Hearing on Post–Conviction Relief ("PC–R"), at 18–19. Moreover, although Gibson claimed otherwise at the hearing, the record indicates— and the state appellate court found—that Gibson's counsel kept Gibson well-advised of his progress in attempting to obtain protective custody for Gibson's family. PC–R, at 23. Given this record and the state court's factual findings based on that record, this court cannot conclude that Gibson's counsel acted unreasonably.

■ Gibson's second complaint concerning his trial counsel is that his counsel failed to attempt to have the trial transferred to Tazewell County. As noted above, Gibson was indicted in Tazewell County, but tried in Mason County. Sometime before trial began, Gibson claims he explained to his counsel that, in fact, the offense occurred in Tazewell County. Gibson asserts that his counsel's failure to request that the trial be transferred to Tazewell County was constitutional error.

The court cannot agree. Although his counsel failed to request that the case be transferred, Gibson's counsel did move to dismiss the indictment on the grounds that, under state law, Mason County had no jurisdiction to try a case brought by a grand jury convened in Tazewell County. Gibson, however, argues that instead of moving to *dismiss* the indictment because of the confusion in counties, his counsel merely should have moved to *transfer* the trial to Tazewell County. The court cannot understand, and Gibson does not explain, how counsel's choice of tactics was in any way unreasonable.

■ Gibson's final complaint concerning his trial counsel is that his counsel informed the jury without Gibson's consent that Gibson disposed of the victim's body. At the hearing on Gibson's post-conviction petition, Gibson's counsel was asked whether Gibson concurred in his decision to admit to the jury that Gibson disposed of the body. Counsel for Gibson stated that he and Gibson had discussed this aspect of trial strategy "numerous times" and that Gibson agreed with the decision. PC–R, at

65–66. Although Gibson testified otherwise, the state courts which reviewed Gibson's post-conviction petition found that the decision to inform the jury that Gibson disposed of the body was made by both Gibson and his lawyer. *People v. Gibson*, No. 4–84–0810, slip op., at 5 (Ill.App.Ct. December 4, 1985). Under these circumstances, the court must conclude that this strategic decision was made jointly and this court will not second-guess that decision.

Because the court finds that Gibson's counsel acted reasonably, it need not determine whether his counsel's actions affected the outcome of Gibson's trial.

*Sixth Amendment Claim*

■ Gibson claims that his Sixth Amendment right to counsel was violated when the state trial court admitted the statements of George Shaw—a jailhouse informant placed in Gibson's cell while Gibson was being held in Nevada—into evidence at his trial. The Illinois Appellate Court in 1982 agreed that constitutional error had been committed, but also found that the error was harmless. As explained below, for this court to rule on this claim, more information is needed from both Gibson and the respondents. Accordingly, the court orders that the record be expanded.

At the time the Illinois Appellate Court ruled that the admission of Shaw's testimony was error, the leading case concerning the admissibility of statements of jailhouse informants was *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In *Henry*, the Supreme Court held that when the government "intentionally creat[es] a situation likely to induce [a defendant] to make incriminating statements without assistance of counsel, the Government violate[s] [that defendant's] Sixth Amendment right to counsel." 447 U.S. at 274, 100 S.Ct. at 2189. Accordingly, the suppression hearing held in this case, and the Illinois Appellate Court's subsequent review of this case, focused on the actions and intent of the Nevada police officers who planted Shaw in Gibson's cell. *See, e.g., People v. Gibson*, 109 Ill.App.3d at 322–23, 64 Ill.Dec. 787, 440 N.E.2d 339

(citing suppression hearing statement of Officer Eubanks).

It has been eleven years since *Henry* was decided and nine years since the Illinois Appellate Court reviewed this case; in that time, the rule set out in *Henry* has been altered by both the United States Supreme Court and the various federal Circuit Courts of Appeal. *See, e.g., Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (whether the jailhouse informant directly questioned the defendant is a key factor in deciding whether Sixth Amendment has been violated). In this case, before examining whether the alleged error was harmless, the court must examine the most recent law regarding the Sixth Amendment, making its own finding as to whether Gibson's Sixth Amendment right to counsel was violated by the admission of Shaw's testimony. Although the respondents felt free to adopt the curious litigation strategy of simply conceding without discussion that Gibson's constitutional right to counsel was violated, Respondents' Answer, at 3, this court may not do so. Thus, both the respondents and Gibson must address whether the admission of Shaw's testimony violated Gibson's constitutional right to counsel with reference to more recent federal case law. Although the respondents may yet decide to concede that Gibson's constitutional right was violated, they must first address the applicable law.

■ In addressing this issue, both sides must bear in mind the statutory presumption of correctness afforded state court findings of fact. *See* 28 U.S.C. § 2254(d). As noted above, the trial court held a suppression hearing regarding the admission of Shaw's testimony. Both that court's and the Illinois Appellate Court's findings of fact bind this court. *Anderson v. Thieret,* 903 F.2d 526, 530 (7th Cir.1990). As

also noted above, however, the focus in *Henry* was more on the actions and intent of the police officers, while later cases seemed to shift that focus to whether the jailhouse informant directly interrogated the defendant. Given this change in focus, the state court findings of fact may be of limited use. Nevertheless, both sides must address the effect of the Illinois Appellate Court's apparent finding that "the informant asked questions of the defendant to clarify his statements concerning the victim's death." *People v. Gibson,* 109 Ill. App.3d at 324, 64 Ill.Dec. 787, 440 N.E.2d 339. Also, both sides must address the effect of Shaw's admission that he questioned Gibson concerning the gun used in the murder. Transcript of September 2, 1981 Suppression Hearing, at 61–62.[5]

■ Assuming that the court finds that Gibson's Sixth Amendment right to counsel was violated by the admission of Shaw's testimony, the court also orders Gibson and the respondents to address whether that error can be considered harmless. It is well-settled that *Henry*-type violations are subject to harmless error analysis, *Robinson v. Percy,* 738 F.2d 214, 220 (7th Cir.1984), and that a federal habeas court conducts its own, independent harmless error analysis. *Savory v. Lane,* 832 F.2d 1011, 1018 (7th Cir.1987). To be harmless, the respondents must prove "beyond a reasonable doubt" that the error in no way contributed to the jury's finding of guilt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). To do so, the respondents must prove that the other evidence in the case is "overwhelming," *Savory,* 832 F.2d at 1020, or that the error had no identifiable impact on the jury. *Fencl v. Abrahamson,* 841 F.2d 760, 769 (7th Cir.1988); *see also Hunter v. Clark,* 934 F.2d 856 (7th Cir.1991) (en banc).

---

**5.** Although the respondents supplied the court with several transcripts, the court could not locate the trial court's decision concerning the admission of Shaw's testimony. The transcripts provided include the suppression hearing and the entire trial, but not the trial judge's intervening decision to admit Shaw's testimony and, apparently, his decision to exclude other testimony to which Gibson objected. The briefs submitted to the Illinois Appellate Court make

reference to the trial court's decision on this matter—*See* Brief For Defendant, at 11 (citing "Vol. I, C. 87–89")—but they do not indicate whether the trial court's decision was given orally or in a written order. Either way, the court must examine the trial judge's decision and his factual findings regarding the evidence Gibson sought to suppress before trial. If that decision is unavailable, the court must be so advised.

In this case, the respondents' original answer did argue that the constitutional violation was harmless. For the most part, however, this argument merely consists of a litany of the other evidence in the case and a chronology of the police investigation into the crime. More importantly, since that original answer was filed, the Supreme Court has issued an opinion in which it found that the improper admission of a defendant's incriminating statement was not harmless error, even though the defendant had made other incriminating statements which were not tainted with error. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (applying harmless error analysis to statements admitted in violation of a defendant's Fourteenth Amendment right against coerced confessions). In that opinion, the Court set out several factors to be examined when determining whether the wrongful admission of incriminating statements was harmless, several of which may apply here. *See id.* at 1257–61.

What concerns the court about Shaw's testimony is the way it may have been used by the prosecution. Part of Gibson's defense at trial was that for several weeks after the murder, he was distraught and was abusing alcohol and drugs. This condition, according to Gibson, was responsible for his occasional incoherent statements, some of which were incriminating. At trial, there was significant evidence presented by Gibson that, in fact, he was abusing alcohol and drugs after the murder and that many of his incriminating statements were quickly followed by statements which were nonsensical. Thus, several of the incriminating statements made by Gibson were undercut and their credibility challenged.

Gibson's statements to Shaw, however, were made several months after the murder and were made while Gibson was free of alcohol and drugs while in a jail cell in Nevada. It appears that Shaw's testimony may have acted as a kind of support for the other incriminating statements, the credibility of which Gibson's defense had challenged. Indeed, the prosecutor referred to Shaw as one of the "two major witnesses for the People," Vol. XVIII, at 77, and he noted that when Gibson confessed to Shaw, "there were no booze [sic] and no drugs doing the talking." Vol. XII, at 14. If Shaw's testimony was necessary to convince the jury that the other incriminating statements made by Gibson were reliable, the absence of that testimony may have been significant. In their responses to this order, the court expects both sides to address this issue, paying particular attention to the factors set out by the Supreme Court in *Fulminante.*

The legal and constitutional issues presented by Gibson's remaining claim are not elementary. Accordingly, the court appoints Arthur Inmann, Esq., of Peoria, Illinois, to represent Gibson. The respondents will be given thirty days to file their response to this order and then Gibson, through his appointed attorney, will have thirty days to respond. Because both sides will need to examine the state court record, each side will be granted the opportunity to withdraw and inspect that record, returning it to the court with its brief.[6]

IT IS THEREFORE ORDERED that the respondents submit to the court within thirty (30) days the decision of the state trial court following Gibson's suppression hearing and that the respondents answer Gibson's remaining claim as outlined in this order. The clerk is ordered to send the entire state court record in this case to the respondents with this order.

IT IS FURTHER ORDERED that Benjamin Gibson respond to the respondents' answer within thirty (30) days of receiving it.

IT IS FURTHER ORDERED that Arthur Inmann, Esq., is hereby appointed to represent Benjamin Gibson.

---

6. The court will rule on Gibson's motion for an evidentiary hearing after it reviews the briefs required by this order.