UNITED STATES of America, ex rel., Benjamin J. GIBSON, Petitioner,

v.

Kenneth McGINNIS, et al., Respondents.

No. 91–2025.

United States District Court, C.D. Illinois, Danville Division.

April 20, 1992.

**174**

Arthur J. Inman, Peoria, Ill., for petitioner.

Nathan P. Maddox, Asst. Atty. Gen., Springfield, Ill., for respondents.

## ORDER

HAROLD ALBERT BAKER, District Judge.

In November, 1990, Benjamin Gibson petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In this petition, Gibson alleged numerous grounds for relief, but only his claim that the admission of statements he made to a jailhouse informant violated his Sixth Amendment right to counsel is at issue today. On direct appeal from Gibson's conviction, the Illinois Appellate Court held that the trial court erred in admitting the statements, but that the error had been harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *People v. Gibson*, 109 Ill.App.3d 316, 64 Ill.Dec. 787, 440 N.E.2d 339 (1982). In order to rule on the merits of Gibson's petition, this court must determine first, whether in light of intervening Supreme Court decisions, the trial court's admission of those statements was in fact constitutional error, and if so, whether that error was harmless beyond a reasonable doubt.

■ The facts and procedural history of this case have been set out in some detail in the court's order of July 31, 1991, *Gibson v. McGinnis*, 773 F.Supp. 126 (C.D.Ill.1991), and the court will not repeat them here. As a preliminary matter, the respondents contend that at the time Gibson made the inculpatory statements to the informant, he had no Sixth Amendment right to counsel.[1] The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Moore v. Illinois*, 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 (1977); *Michigan v. Jackson*, 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 1407 n. 3, 89 L.Ed.2d 631 (1986). For the Sixth Amendment right to counsel to attach, the government must do more than investigate the defendant, *United States v. Jungels*, 910 F.2d 1501, 1502 (7th Cir.1990), or even arrest him. *United States v. Gouveia*, 467 U.S. 180, 190, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984). The government must have "crossed the constitutionally significant divide from fact-finder to adversary" by committing itself to prosecute. *Hall v. Lane*, 804 F.2d 79, 82 (7th Cir.1986); *Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298.

■ In this case, Gibson encountered George Shaw, a jailhouse informant, prior to Gibson's preliminary hearing and indictment but after the Tazwell County State's Attorney had filed an information alleging that Gibson had committed the murder and after his arrest in Reno, Nevada. Although the Supreme Court has clearly stated that the filing of an information triggers the Sixth Amendment right to counsel, the trial court at Gibson's criminal trial determined that Gibson's right to counsel did not attach until the preliminary hearing, and therefore did not protect him during his conversation with Shaw. The trial court relied on Ill.Rev.Stat. ch. 38, § 111–2, which provides that "no prosecution may be pursued by information unless a preliminary hearing has been held or waived...." Citing *Moore v. Illinois*, 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424 (1977), the trial court reasoned that the prosecution had not officially begun until the prosecu-

1. Under *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), custodial statements made to a jailhouse informant do not implicate the fifth amendment or *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tor received approval from the judge to proceed.[2]

This court disagrees with the respondents and with the trial court and finds that when the prosecution filed the information against Gibson, it triggered Gibson's right to counsel under the Sixth Amendment. An information is a charging instrument. 21A *Illinois Law and Practice*, at 5–6. By signing and filing the information, the state's attorney commenced Gibson's prosecution. Ill.Rev.Stat. ch. 38, § 111–1; *see also* Ill.Rev.Stat. ch. 38, § 111–3(b). Although *Moore* held that a defendant has a Sixth Amendment right to counsel at the preliminary hearing, that decision in no way precludes the emergence of the right to counsel prior to the preliminary hearing. The case law is clear that "[a]fter charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel." *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 2399, 110 L.Ed.2d 243 (1990).

■ The next question the court must address is whether the government, through jailhouse informant Shaw, elicited statements from Gibson in violation of his Sixth Amendment right to counsel. We hold that it did not. In *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court held that an undisclosed government jailhouse informant "deliberately elicited" incriminating statements from the defendant and therefore interfered with his Sixth Amendment right to counsel. Although instructed not to question the defendant, the informant in *Henry* "had some conversations with [the defendant]" and the defendant's incriminating statements "were the product of this conversation." *Id.* at 271, 100 S.Ct. at 2187. The Court found that the FBI agent who sent the informant into the defendant's cell "was aware that [the informant] had access to [the defendant] and would be able to engage him in conversa-

tions without arousing [the defendant's] suspicion." *Id.* at 270, 100 S.Ct. at 2187. The Court pointed further to "the powerful psychological inducements to reach for aid when a person is in confinement" and reasoned that the defendant was "particularly susceptible to the ploys of undercover government agents." *Id.* at 274, 100 S.Ct. at 2189. According to the Court, the government "intentionally creat[ed] a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel...." *Id.*

In *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Court expanded upon its holding in *Henry.* The Court held that the Sixth Amendment did not forbid "admission in evidence of an accused's statements to a jailhouse informant who was 'placed in close proximity but [made] no effort to stimulate conversations about the crime charged'" *Kuhlmann,* 477 U.S. at 456, 106 S.Ct. at 2628 (quoting *Henry,* 447 U.S. at 271 n. 9, 100 S.Ct. at 2187 n. 9). " '[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached.'" *Kuhlmann,* 477 U.S. at 459, 106 S.Ct. at 2630 (citing *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)). In order to make out a Sixth Amendment violation, "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.*

In reaching its decision in *Kuhlmann* that the petitioner's Sixth Amendment rights were not violated, the Court characterized his statements to the informant as "spontaneous" and "unsolicited," and it characterized the informant as passive. *Id.* 477 U.S. at 460, 106 S.Ct. at 2630. The facts reveal that the cell the petitioner shared with the informant overlooked the

2. In deciding that it was error for the trial court to admit Shaw's testimony, the Illinois Appellate Court did not address this issue of whether Gibson's sixth amendment right to counsel had attached at the time that he had the conversa-

tions with Shaw. However, this court must address the issue in order to determine whether Gibson's federal constitutional rights have been violated.

scene of the alleged crime. When petitioner entered the cell and looked out the window, he became upset and remarked to the informant, "someone's messing with me." He then began "narrating the same story that he had given the police at the time of his arrest." *Id.* at 439, 106 S.Ct. at 2619. The informant replied to the petitioner that his story "didn't sound so good." *Id.* at 439–40, 106 S.Ct. at 2619. The petitioner and the informant engaged in at least some conversation during several days, and the petitioner eventually confessed the crime to the informant. *Wilson v. Henderson,* 742 F.2d 741, 745 (2d Cir.1984) (same case in court of appeals). The Court in *Kuhlmann* distinguished these facts from the facts of *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), which concerned statements that the petitioner had made to his accomplice who, unbeknownst to the petitioner, was wired and who was cooperating with the police. In *Moulton,* the informant "repeatedly asked the defendant to remind him of the details of the crime, and encouraged the defendant to describe his plan for killing witnesses." *Kuhlmann,* 477 U.S. at 458, 106 S.Ct. at 2629 (citing *Moulton,* 474 U.S. at 165–66, 106 S.Ct. at 482).

In *Kuhlmann,* the Court seemed primarily concerned with whether the informant questioned the petitioner about the incident. The *Kuhlmann* opinion also placed less emphasis on the psychological inducements to speak that exist in a jailhouse situation than the Court did in *Henry.* For example, the Court rejected the conclusion of the Court of Appeals that "subtly and slowly, but surely, [the informant's] ongoing verbal intercourse with [respondent] served to exacerbate [respondent's] already troubled state of mind." *Kuhlmann,* 477 U.S. at 460, 106 S.Ct. at 2630. In addition, the Court was entirely unimpressed with the fact that the cell where the police placed the informant and the respondent overlooked the scene of the crime.

In order to decide in this case whether admitting Gibson's statements to Shaw into evidence violated Gibson's Sixth Amendment right to counsel, the court must determine whether the Reno police "deliberately elicited" incriminating statements from Gibson. *Kuhlmann,* 477 U.S. at 457, 106 S.Ct. at 2629 (citing *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)). This court must determine whether, in light of *Kuhlmann,* Shaw's conduct crossed that fuzzy, often deceptive line between passive listening and the functional equivalent of interrogation.

It was not merely fortuitous that Shaw happened to be in the cell with Gibson when Gibson was discussing the murder. Officer Eubanks of the Reno, Nevada police department placed Gibson in Shaw's cell for the purpose of obtaining information. Trial Record, Vol. XI at 23 (Hearing on Motion to Suppress). Before placing Gibson in Shaw's cell, Eubanks informed Shaw that Gibson was arrested on an out-of-state warrant for a murder involving "some type of cocaine deal," and Eubanks asked Shaw to "pay attention to anything the man might say regarding what had happened." *Id.* at 18. Officer Eubanks instructed Shaw not to

> ask any direct questions [or] instigate any conversation regarding any criminal activity or anything that he was under arrest for. If the man talked to him or admitted or related or volunteered any information that he may talk back to the man in response to that in normal conversation manner, but he may not interrogate the man or perform an actual interview or actually seek or elicit any information from the man.

*People v. Gibson,* 109 Ill.App.3d at 323, 64 Ill.Dec. 787, 440 N.E.2d 339.

In addition, although Shaw was not being paid by the police for the information that he obtained from Gibson, he was an established, reliable "snitch," who had testified on approximately fifteen occasions regarding information that he had obtained. Trial Record Vol. XI at 20–22, 56. He also often received rewards from the California and Nevada "secret witness program" for testimony. Trial Record Vol. XVI at 30. Shaw also admitted that he did not testify against Gibson out of the goodness of his heart. Trial Record, Vol. XI at

51. Arthur Avart, of the Illinois Division of Criminal Investigation, who went to Reno to investigate Gibson while he was in the jail there, provided further evidence that the Reno police deliberately placed Shaw in Gibson's cell in order to obtain incriminating statements from Gibson. When asked whether he knew at that time that Gibson had been placed in a cell with an informant, Avart replied that "we were made aware of the knowledge that [Gibson] was in the cell with someone who would tell us what was going on." *Id.* at 131.

Gibson was placed in Shaw's cell at approximately 11:00 A.M. Except for several hours, between approximately 2:00 P.M. and approximately 5:00 P.M., when he was interviewed by authorities from Illinois, Gibson remained in Shaw's cell until the following morning. While there is no evidence that Shaw initiated questions of Gibson about the murder, Shaw did converse with Gibson at length during a several hour period. Shaw testified at the suppression hearing that Gibson was upset when he entered his cell, and that Gibson introduced himself and began discussing the circumstances of his arrest. Trial Record, Vol. XI at 53. In particular, Shaw stated:

ANSWER: [Gibson] introduced himself to me and he explained what happened to him, how he came about to be arrested and the charges that he was brought in for.

QUESTION: What did you say to that?

ANSWER: I don't recollect the exact words, something to the effect, really, you know, what kind of charge is that.

*Id.* at 52. In addition, Shaw told Gibson that he was also in jail on a murder charge, when in fact he was not. *Id.* at 49. Shaw also asked Gibson if he wanted a cigarette, in order to "try to make things [in jail] a little easier." *Id.* at 57. After Gibson had confessed the murder to Shaw, the evidence shows that Shaw made several direct comments about the murder. When Gibson wondered aloud whether the police had found the body, Shaw responded that "they must have found the body if they are going to charge you with murder." *Id.* at 46. When Gibson returned from his interview with the Illinois detectives, he stated that "they had him, what should I do?" and Shaw suggested to Gibson that he might be better off if he "came clean." *Id.* at 56–60. At this point, Shaw also asked Gibson if the police had the gun that was used. *Id.* at 61. Shaw also asked Gibson why he killed the victim. *Id.*

It seems clear, therefore, that the Reno police purposefully placed Gibson in the same cell with an informant, hiding from Gibson the fact that Shaw was an informant, in order to obtain incriminating statements from Gibson after his right to counsel had attached. Under *Henry,* the admission of the statements that Gibson made to Shaw violated Gibson's Sixth Amendment right to counsel. However, under *Kuhlmann,* because Shaw did not directly question Gibson about the murder, but merely engaged him in general conversation, it was not error for the trial court to admit Shaw's testimony. The Illinois Appellate Court was correct when it noted that this case is "virtually indistinguishable" from *Henry. People v. Gibson,* 109 Ill.App.3d at 323, 64 Ill.Dec. 787, 440 N.E.2d 339. However, in this court's assessment, the facts of this case are also virtually indistinguishable from the facts of *Kuhlmann,* and *Kuhlmann* governs this case. The court must therefore deny Gibson's petition for a writ of habeas corpus.

Because there was no Sixth Amendment violation, it is unnecessary to reach the harmless error issue.

IT IS THEREFORE ORDERED that Gibson's petition for a writ of habeas corpus (docket # 6) is denied.

IT IS FURTHER ORDERED that Gibson's request for an evidentiary hearing (docket # 16) is denied.